LEONARD C. STOCKTON V. THE STATE.

No. 23057. Delivered March 14, 1945.
Rehearing Denied May 2, 1945.

The opinion states the case.

*Reginald Bracewell,* of Huntsville, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was charged with the unlawful killing of George Preston, and by the jury given the penalty of death.

Appellant was an inmate of the State penitentiary, confined on the Wynn Farm, a short distance north of Huntsville. On the day in question, certain prisoners were turned into an opening in the farm buildings for the purpose of receiving treatment, such being called the "Sunshine Squad." Some of the most trusted prisoners were used as turnkeys at the gates to such opening, to what was called the bull pen, appellant being one of such trusties. Mr. Preston was a guard inside the Wynne buildings, located in a picket or enclosed place, with a vision over the place where such "Sunshine Squad" was located. In some manner appellant and his coconspirators became possessed of a key to the arsenal at said farm, and were each armed with a rifle or pistol, appellant having both such arms. These men took

custody of all the employees and guarded them while completing their escape. The appellant, upon possessing himself of a rifle and a pistol, shot Mr. Preston as he sat in the picket guards cage, and killed him; they then took over the Wynn farm main building, capturing the captain in charge thereof, as well as guards and employees; then stole the captain's car and fled therefrom. There is no denial of the killing of the guard, and we can assume that such killing was done in order to facilitate the escape of the conspirators.

Appellant duly and timely filed a motion for a severance between James McLemore, Eugene Padgett and himself, all three of whom being separately indicted for this same offense. The trial court granted such motion, and upon a failure of the three indictees to agree upon their order of trial, the court placed appellant upon trial first, his indictment being earliest in number. The action of the trial court was correct under Art. 652, C.C.P.

Appellant then filed a motion for a change of venue, utilizing as compurgators thereto his own attorney, and a further attorney for another one of the indicted persons for this killing. Under our decisions this is not a sufficient compliance with the statute, Art. 562, C. C. P., see Luttrell v. State, 70 Tex. Cr. R. 183, 157 S. W. 157; Hassell v. State, 107 Tex. Cr. R. 541, 298 S.W. 293, and further we are of the opinion that the trial court did not abuse his discretion in refusing such change of venue.

Under the evidence as here presented we see no self-defense therein.

We are also of the opinion that no misconduct of the jury is manifested in the matters shown in bill No. 10.

We see no error in the sheriff bringing the appellant into the court room in handcuffs, which were immediately removed upon reaching the court room after appellant was seated therein. The sheriff evidently knew the dangerous character of appellant, and that he had evidenced such by the killing of a person who was guarding him, and what he had done once he probably might attempt to do again.

In bill of exceptions No. 17 it is shown that O. E. Ellington was offered as a prospective juror, and it was shown on his voir dire examination that he had known Mr. Preston, the deceased, for twenty-five years; that he had heard about his homicide from street talk only; that he had conscientious scruples

against the infliction of death as a punishment for crime; his conscience would not permit him to inflict death as a penalty for crime,—at which time he was challenged by the State for cause; the court then said: "You mean there is not any kind of murder case which your conscience would permit you to inflict death? * * * Just imagine the worst state of facts?" Ans. "I wouldn't like to, but I believe I could." The challenge was then overruled. In cross-examination he said: "I was raised at Goshen. Yes, sir, Mr. Preston and I lived as neighbors a good many years. Yes, sir, I know Mrs. Preston. Yes, sir, I have some children, one of my nephews married his daughter. * * * Mr. Preston's daughter is my niece by marriage." Whereupon appellant requested the court to stand this juror aside for cause. This the trial court refused to do, and appellant's attorney was caused to exercise a peremptory challenge on the proffered juror. In selecting the jury appellant exhausted his fifteen challenges.

The basic purpose of Art. 616, C. C. P., relative to challenges to persons for cause, is to provide fair and impartial jurors both for the State and the defendant, and although this proffered juror, Mr. Ellington, was not related to the deceased, he was related to deceased's daughter by affinity in the third degree, and though he was evidently a good conscientious citizen, we are impressed with the belief that he would experience great difficulty in maintaining an impartial attitude in passing upon an act that resulted in the death of his niece's father. Regardless of the fact that the juror testified that he thought he could give appellant a fair and impartial trial, we think the trial court should have sustained this challenge for cause. However, we would not base a reversal hereof on this matter alone.

We do think Bill No. 19 evidences a serious matter. After appellant had exhausted his fifteen peremptory challenges, and after eleven jurors had been selected, one S. B. Stutts was presented on his voir dire. The juror testified, among other things: "Yes, sir, I have some kinfolks working for the system. As to who he is; it is Raz Stutts. Yes, sir, he works up at the walls. * * * I have some other kinfolks working for the prison system, an uncle, C. M. Matthews. * * * he worked at the Wynne farm, and the fact that he worked at such farm would not influence me, and I have not talked to him about this case, and I could go into the jury box and give the defendant a fair trial. Mr. Matthews is my mother's brother."

It was shown that Mr. Matthews was summoned as a witness in the case by the State, but was not placed on the stand.

Appellant challenged this juror for cause as not being a fair and impartial juror, which challenge was overruled, and the juror was sworn in and sat in the case.

The record shows that this juror's uncle was one of the persons taken in charge by appellant after the keys to the arsenal had been obtained from either Mr. Holman, the steward at the farm, or Mr. Matthews, the assistant steward. The testimony of Lee Allen, a guard, shows that immediately after appellant had killed Mr. Preston, he forced Allen into what was called the bookkeeper's place, and then brought to the same place Guy Holman, still having the rifle in his hand, and then he brought up Mr. Commie Matthews, an assistant steward. "When they got him up there they jerked out his keys,—when Leonard Stockton got Mr. Matthews up there he jerked some keys out, * * * he was all time cursing." Again, on cross-examination of the witness Allen: "As to whether any guards were on duty there, Mr. Holman and Mr. Matthews were there, * * * they are steward and assistant steward; they are not guards." Again: "That's right, Captain Baughn came in and Leonard Stockton ordered him to sit down; as to whether Leonard Stockton brought Holman and Matthew back, Leonard Stockton brought them up front."

The defense witness, H. W. Painter, a convict, testified first as an expert medical witness, he being a physician, and then as to the facts he said: "Several seconds later I saw Leonard Stockton coming from the south end of the main entrance. * * * he met Mr. Holman. * * * he told him to come with him. * * * then he came back down there. * * * then it was he met assistant steward Matthews. * * * he carried him out. * * * on each occasion that he moved the employees he had his Winchester. * * * he told them to come on with him. * * * * I didn't see him search Mr. Matthews in my presence."

It is evident from the above quotation, as well as the entire testimony, that appellant, possessed of a pistol and a rifle, took charge of the Wynne prison farm, and all of its employees, including the captain, the man in charge, the guards, stewards and trusties, and threatened them with death, and actually killed one of the guards; that his conduct relative to Mr. Matthews amounted to an assault, and probably resulted in the arming of at least two other convicts, and the escape of all three convicts.

The juror Stutts was a nephew of this Mr. Matthews, the assistant steward, and surely did not appreciate the mistreat-

ment of his mother's brother by appellant. We think appellant's attorney's objection to the juror was well founded, and the trial court should have stood this juror aside upon objection timely made by appellant's attorney.

We held in the case of Holmes v. State, 70 Tex. Cr. R. 431, 157 S. W. 487, that the court did not err in sustaining the State's challenge for cause to a juror whose sister had married the accused's brother, saying: "Even if this had not been a good cause for challenge, no injury whatever is attempted to be shown by appellant in his bill on that subject."

In the case of Page v. State, 22 Tex. App.. 551, 3 S. W. 745, it was held a fatal error to impanel a juror who was the husband to a second cousin of the alleged injured party.

In the case of Powers v. State, 27 Tex. App. 700, it was held error to allow a juror, a brother-in-law, to a party who in one count in the indictment was alleged to have been the owner of the animal stolen.

In the case of Wright v. State, 12 Tex. App. 163, several horses had been stolen at about the same time, and separate indictments had been found against the accused and others, and a juror, a brother of one of the injured parties in another case, and under a separate indictment against the accused, was taken as a juror in the Wright case. This court held that the challenge to the juror should have been sustained.

It was also held in the case of West v. State, 8 Tex. App. 119, that two jurors, who knew nothing about the case, but belonged to the regular jury panel, but whose names were placed on the indictment as witnesses, should have been excused upon a proper challenge, and if the accused had exhausted his challenges and forced to accept an objectionable juror, such challenge should have been sustained.

We think it is clearly shown herein that the juror Stutts, the last one taken over appellant's attempted challenge for cause, was an objectionable juror. It can be said that he seemed to be conscientious about the matter, and stated that he thought he could render a fair and impartial verdict in the case, regardless of the fact that his uncle was or would be a witness in the trial. While the uncle was not actually used in the trial, nevertheless it was shown that such uncle was the victim of an assault by appellant, and surely placed in fear and in danger of losing his

life at the same time Mr. Preston met his death. We think it would have been contrary to human nature to say that Mr. Stutts would not naturally resent such treatment of his mother's brother. The basic reason for appellant being without a peremptory challenge to relieve himself of the presence of Stutts on the jury was the overruling of the proper challenge for cause and the forced use of a peremptory challenge by appellant to the juror Ellington as shown by bill of exceptions No. 17, such juror being related by affinity to the deceased's daughter in the third degree.

We do not think appellant was tried before a proper jury as is contemplated by law. The judgment is therefore reversed and remanded.

ON STATE'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

The burden of the State's argument in its opinion for rehearing is that a juror is not disqualified merely because of relationship to a witness in the case. This will be conceded. The original opinion, discussing the Juror Stutts, makes it clear that there is something more than a relationship to a witness. His uncle who had been summoned as a witness was an interested party in the prosecution. It is unthinkable that Stutts could be a fair juror under the facts as sufficiently stated in the opinion. The case of Burge v. State, 35 S. W. (2d) 735, is relied upon as authority for the conclusion reached that this case should be reversed. The District Attorney, in his brief, admits the seriousness of the question in view of the Burge case. We think the Burge case is in point, is decisive, and furthermore, that it sounds a note of warning which might well be heeded consistent with the statement hereinafter made on the subject of reasonable doubt.

The District Attorney devotes considerable attention to the remarks made relative to the Juror Ellington, apparently taking the view that we are overruling Cortez v. State, 161 S. W. (2d) 495, and holding Ellington to be disqualified. The opinion says "* * * we think the trial court should have sustained this challenge for cause. However, we would not base a reversal hereof on this matter alone." Ellington was not taken as a juror and the opinion is construed to mean that it would have been reversed but for the fact that he was eliminated. We have no intention to overrule or modify the holding on the subject in Cortez v. State, supra, but there does appear under the circumstances of the case now before us a relationship, by marriage

and long acquaintance, which impressed us as being dangerous, from which an uncertainty arises as to the ability of the juror to be fair.

We have read a large number of expressions by different judges of this and other courts on the subject and while there is not an expressed conflict in the line of decisions it is revealed that various judges have had different leanings, some one way and some another, which might reasonably be expected to have produced conflict in the decisions. This indicates that varied circumstances might easily have determined some of these cases quite differently. The writer of this opinion is very frank to say that when circumstances are such as to reasonably create a doubt in the mind of the trial judge as to the ability of a juror under given circumstances to be fair it becomes the duty of the trial judge to resolve that doubt in favor of the party raising the objection. Any other viewpoint would be inconsistent with the rule of reasonable doubt.

Judge Morrow calls attention to a number of decisions on the subject and quotes from Sorrell v. State, 169 S. W. 299, as follows: "One improper juror destroys the integrity of the verdict."

Judge Henderson said, in Cortez v. State, 69 S. W. 536, "Prejudice is a sinister quality; and the very person whom it actuates may be unconscious of its existence." It has also been observed with frequent expression that jurors who are in position in relation to interested parties to have questions raised about their qualifications are asked whether or not they could give the party a fair trial. They are not further examined as to what their idea of a fair trial for that party would be.

Much more is involved than the mere right of the party on trial. The case before us presents a good example. The circumstances of the case indicate one in which no jury of fair minded men would occasion surprise by inflicting the death penalty. Nevertheless, their verdict in the case should be clothed and surrounded with such circumstances as would entitle them, as a body and as individuals, as well as the officers of the court, to the highest respect in the minds of the general public whose viewpoint may be considered as a valuable aid in the enforcement of law. Our Constitution (Art. 1, Sec. 10) guaranties to a party on trial circumstances and conditions entitling him to the assurance that no sentiment or design against him shall find a way into the jury box save that raised by the testimony heard upon the trial. It has been said: "The verdict of the jury should reflect the testimony in the case. The reflection should be a per-

fect one, not a distorted or imperfect one. One crack in the mirror, one ripple upon the surface of the pool, is sufficient to destroy the trueness of the reflection." It is just as important in the proper procedure for the guarantee of fair and impartial trials to protect the accused against one biased juror as it is against twelve. The rule is not made for the trial alone of the innocent wrongfully accused but as well for those who, like the appellant in this case, apparently received an appropriate penalty. No rule can be recognized for one which can not be applied to all parties accused of crime.

The State's motion for rehearing is overruled.