William Robert OLIVER, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 09–89–002 CR, 09–89–003 CR.

Court of Appeals of Texas,
Beaumont.

March 21, 1990.

Discretionary Review Granted
June 13, 1990.

Kenneth W. Smith, Houston, for appellant.

Patrick O. Hardy, Dist. Atty., Woodville, for the State.

## OPINION

BURGESS, Justice.

Appellant was convicted, in a consolidated trial, of the offenses of possession of the controlled substances phenylacetone in an amount in excess of 400 grams and methamphetamine in an amount less than 28 grams. The jury assessed punishment at ninety-nine years' confinement in the Texas Department of Corrections and a $100,000 fine and twenty years' confinement in the Texas Department of Corrections and a $10,000 fine, respectively. Appellant perfected this appeal urging five identical points of error in each case. We will address them chronologically rather than numerically.

Point of error two asserts each indictment is fundamentally defective for failing to state an offense. Neither indictment alleges any culpable mental state. The state claims that appellant waived error by not complaining of this defect before the day of trial. *TEX.CODE CRIM.PROC. ANN. art. 1.14(a), (b)* (Vernon Supp.1989) provides:

(a) The defendant in a criminal prosecution for any offense may waive any rights secured him by law. . . .

(b) If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding.

Appellant argues the article 1.14 waiver is inapplicable in this case because no offense was ever charged. In order to invoke the jurisdiction of the trial court the charging instrument must allege an offense; otherwise, jurisdiction never vests in the trial court and any judgment that is rendered thereon is void. *Thompson v. State*, 697 S.W.2d 413 (Tex.Crim.App.1985). To be valid, an indictment must allege each essential element of the offense sought to be charged. *Ex parte Elliott*, 746 S.W.2d 762 (Tex.Crim.App.1988). Unless the definition of the offense clearly disposes with the requirement of a culpable mental state, it must be pleaded in the charging instrument. *Thompson*, 697 S.W.2d at 415. If an element is omitted, the trial court never acquires jurisdiction, a conviction based thereon is void, and thus a jurisdictional defect in the indictment may be raised at any time. *LaBelle v. State*, 692 S.W.2d 102 (Tex.Crim.App.1985).

*TEX. CONST. art. V, sec. 12(b)* (1891, amended 1985), reads:

An indictment is a written instrument presented to a court by a grand jury charging a person with the commission of an offense.... The practice and procedures relating to the use of indictments and informations, including their contents, amendment, sufficiency, and requisites, are as provided by law. The presentment of an indictment or information to a court invests the court with jurisdiction of the cause.

The question is whether the face of the indictments confer jurisdiction on the district court. If they do not, they are void. Article 1.14 applies to defects, even fundamental defects, *in indictments.* An instrument so defective that it does not charge a person with the commission of an offense is not a charging instrument under *TEX. CONST. art. V, sec. 12,* does not invest a court with jurisdiction and such defect will not be waived pursuant to *TEX. CODE CRIM.PROC.ANN. art. 1.14* (Vernon Supp.1989). *See Milam v. State,* 742 S.W.2d 810 (Tex.App.—Dallas 1988, pet. granted); *Studer v. State,* 757 S.W.2d 107 (Tex.App.—Dallas 1988, pet. granted). Arguably, article 1.14 would do away with the former fundamental defect rules in cases other than where the indictment fails to aver facts constituting a criminal offense. *See Aylor v. State,* 727 S.W.2d 727, 730 (Tex.App.—Austin 1987, pet. ref'd). The 1985 amendments to the Texas Constitution did not dispense with the requirement that an indictment state an offense or eliminate the right to indictment by grand jury. The court in *Studer,* 757 S.W.2d at 110, noted the constitutional requirement that the indictment charge an offense be read practically rather than technically. Here, there are no words alleged in the indictments which can reasonably substitute for the missing culpable mental state. An essential element of the offense is simply and utterly absent from the face of the instruments. Therefore, the instruments were fundamentally defective, did not charge offenses, and the trial court was without jurisdiction. *See Murk v. State,* 775

S.W.2d 415 (Tex.App.—Dallas 1989, pet. granted). Point of error two is sustained.

Point of error three claims the court erred in refusing to sustain appellant's objection to the state's use of peremptory challenges to exclude black veniremen from jury service. The record reflects appellant is white. Appellant abandons the claim that *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) applies in this case. Appellant argues he preserved his complaint under *TEX.CODE CRIM.PROC.ANN. art. 35.261(a), (b)* (Vernon 1989), which provides:

(a) After the parties have delivered their lists to the clerk under Article 35.26 of this code and before the court has impanelled the jury, the defendant may request the court to dismiss the array and call a new array in the case. The court shall grant the motion of a defendant for dismissal of the array if the court determines that the defendant is a member of an identifiable racial group, that the attorney representing the state exercised peremptory challenges for the purpose of excluding persons from the jury on the basis of their race, and that the defendant has offered evidence of relevant facts that tend to show that challenges made by the attorney representing the state were made for reasons based on race. If the defendant establishes a prima facie case, the burden then shifts to the attorney representing the state to give a racially neutral explanation for the challenges. The burden of persuasion remains with the defendant to establish purposeful discrimination.

(b) If the court determines that the attorney representing the state challenged prospective jurors on the basis of race, the court shall call a new array in the case.

The state's attorney exercised peremptory strikes against eight of the nine black veniremen. The state's attorney offered no explanation for the strikes, on the basis article 35.261 applies only to strikes made against persons of the same race as the defendant. If appellant were a black person, a prima facie case of discrimination

was made on *Batson* grounds. *See Dewberry v. State,* 776 S.W.2d 589 (Tex.Crim.App.1989).

The state argues article 35.261 did no more than codify *Batson* and *Keeton v. State,* 724 S.W.2d 58 (Tex.Crim.App.1987), which held:

In order to invoke the protections set forth in *Batson,* supra, a defendant must establish purposeful discrimination by showing that:

1. he was a member of a cognizable racial group;

2. the prosecutor had exercised peremptory challenges to remove from the venire members of the defendant's race (peremptory challenges constitute a jury selection practice which permits those to discriminate who are of a mind to discriminate); and

3. the facts and any other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude the veniremen on account of their race.

The significant difference between *Keeton* and article 35.261 is the second *Keeton* requirement is expressly limited to members of the defendant's race. This requirement is conspicuously absent from the statute, which contains much of the same language as *Keeton.* The statute could have been drafted to state "that the attorney representing the state exercised peremptory challenges for the purpose of excluding persons from the jury on the basis of defendant's race" or "that challenges made by the attorney representing the state were made for the purpose of excluding members of defendant's race from the jury." The subpart stating the ultimate finding to be made by the trial court could also have been drafted to state "If the court determines the attorney representing the state challenged prospective jurors of defendant's race...." It does not. There is no ambiguity in the statute for us to construe. Its clear language mandates that the trial court grant the statutory relief if the defendant shows he is of an identifiable racial group, if he makes a prima facie showing the prosecutor struck venire members based on race, and if the court finds the prosecutor, in fact, struck venire members because of *their* race. We hold appellant may be entitled to relief under article 35.-261 even though the state's peremptory challenges of which he complains were used against venire members of a different racial group. The trial court made no specific ruling whether appellant had established a prima facie case tending to show that challenges made by the state's attorney were made for reasons based on race. Failure to do so was error. Point of error number three is sustained. Were this the only point of error sustained in this opinion, we would abate the appeal and order the trial court to conduct a hearing pursuant to article 35.261.

■ Appellant's first point of error asserts the evidence is insufficient to sustain the convictions. We review the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Butler v. State,* 769 S.W.2d 234 (Tex.Crim.App.1989).

Appellant set up a methamphetamine manufacturing facility, hired two individuals to watch the chemicals during processing, then contacted a Harris County narcotics officer and informed him of the location of the laboratory. Appellant gave the officer detailed information including the type of methamphetamine being manufactured, the size of the manufacturing equipment, and the method of manufacture. Appellant accompanied the officer to Tyler County and led local law enforcement personnel to the laboratory. A gallon bottle containing methamphetamine oil, jars with methamphetamine residue, a bottle containing approximately five grams of methamphetamine, a syringe, a spoon, and approximately one gram methamphetamine oil were all confiscated during the raid which resulted in the immediate arrest of the two co-defendants and the eventual arrest of appellant. The assistants testified at trial that appellant set up the facility and actually processed the drugs. They attributed ownership of the seized drugs to appellant.

They also testified appellant mixed the chemicals to start the "cook." Appellant concedes he set up the lab. He also concedes he instructed the co-defendants on the manufacturing procedures.

The police found various containers of what was identified through laboratory tests as phenylacetone and methamphetamine, at a location where appellant had recently been. Appellant does not complain on appeal that the evidence is insufficient to show that he exercised actual care, custody and control over the phenylacetone and methamphetamine found on the premises, or that the substances found were in fact phenylacetone and methamphetamine in the amounts charged.

Appellant's complaint on appeal is "the evidence fails to exclude the hypothesis that appellant was assisting the police when he 'possessed' the substances in question." The testimony of two Houston Police Department narcotics officers established appellant contacted one of the officers on the day of the raid and told the officer he knew the whereabouts of some people who were involved in cooking methamphetamine, and that he wanted some help with the Harris County District Attorney's Office in getting a sentence lowered on a Harris County conviction. Appellant had given the officers information on other individuals in the past. The previous day a female confederate of the appellant had contacted the other narcotics officer and told him she and appellant "had some information on a methamphetamine investigation" but she gave the officer no further information and did not identify the location of the operation. This officer testified he told the woman the following:

> That any information that she had or Mr. Oliver had concerning the manufacturing of methamphetamine, information on people cooking, that indeed if anything was done, an arrest was made, that it could help his case and that we would go through certain procedures of getting that to help him concerning his case.

There was no written plea offer or agreement to exchange assistance in a case for information. Appellant's brief contains the following factual statement:

> Appellant set up a clandestine drug lab, ... recruited his old cooking partner [D.G.] to assist him, in return for a usual percentage of the finished product. Appellant did all of this without the knowledge or approval of police, or the local prosecutor. He then turned his old confederates over to the law.

Appellant claims his motive in assisting the police negates the objective to exercise care, custody and control over the drugs. However, the alleged motive and the requisite intent are not mutually exclusive. Appellant could intend to possess the controlled substances for a number of purposes, such as sale or personal use, or intend to utilize that possession in a number of ways, such as financial gain or physical gratification. Accepting as true appellant's theme of setting up his confederates for the purpose of turning them over to the police to obtain bargaining power against a prior conviction, he thereby reveals a specific intent to exercise care, custody and control of the controlled substances. That appellant would likely relinquish possession to the authorities upon the accomplishment of his purpose is irrelevant.

Appellant argues, however, that his conduct is justified by *TEX.PENAL CODE ANN. sec. 9.21(a), (d)(1), (2)* (Vernon 1974), which states:

> (a) [C]onduct is justified if the actor reasonably believes the conduct is required or authorized by law, by the judgment or order of a competent court or other governmental tribunal, or in the execution of legal process.
>
> ....
>
> (d) The justification afforded by this section is available if the actor reasonably believes:
>
> (1) the court or governmental tribunal has jurisdiction or the process is lawful, even though the court or governmental tribunal lacks jurisdiction or the process is unlawful; or
>
> (2) his conduct is required or authorized to assist a public servant in the performance of his official duty, even

though the servant exceeds his lawful authority.

The justification provided by this section is conditioned upon the existence of a reasonable belief the conduct is required or authorized by law. Appellant concedes the officers did not know of or authorize appellant's actions. Even if appellant had some hope of obtaining some sort of credit for informing, nothing in the record hints at any belief the appellant's possession of controlled substances might, under such circumstances, be required or authorized by law. There was no court order and no legal process being executed. Nor is there any evidence to even imply appellant believed he was acting on behalf of any public servant. Appellant did not raise the hypothesis that he was assisting the police. Having considered the arguments presented and viewing the evidence in the light most favorable to the prosecution, we find any rational trier of fact could have found appellant acted intentionally or knowingly. Point of error one is overruled.

 Point of error five urges the charge is fundamentally defective. Appellant claims the trial court authorized a conviction on the basis of a culpable mental state less than that statutorily required. We disagree. Appellant made no objection to the charge, which contained the following instructions:

> A person commits the offense of unlawful possession of a controlled substance is he knowingly or intentionally possesses a controlled substance. You are instructed that Phenylacetone and Methamphetamine are controlled substances.
>
> . . . .
>
> "Required culpability" means the mental state required by law such as intent, knowledge, recklessness or criminal negligence.

The actual application paragraphs charged the culpable mental state as "knowingly and intentionally."

 Where jury charge error was not preserved at trial, in order for error to require reversal of the conviction, the error must have been so harmful, in light of the entire record and the entire charge, that the defendant was denied a fair and impartial trial in that he suffered actual egregious harm. *Arline v. State,* 721 S.W.2d 348 (Tex.Crim.App.1986); *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1985) (opinion on rehearing). The part of the court's charge to which we normally look in determining whether the charge is fundamentally erroneous is the part that applied the law to the facts. *Thomas v. State,* 587 S.W.2d 707 (Tex.Crim.App.1979); *Lagrone v. State,* 742 S.W.2d 698 (Tex.App.—Fort Worth 1982), *aff'd,* 742 S.W.2d 659 (Tex. Crim.App.1987). Although the instruction on "required culpability" included as an example of a mental state less culpable than what the jury was required to find to convict, the instruction on "possession" stated the correct mental state and the application paragraph correctly charged the jury. We found the evidence sufficient to prove the culpable mental state under point of error one. The complained of charge was not egregious and did not deny appellant a fair and impartial trial. Point of error five is overruled.

Point of error four complains the judgments contain a fundamental defect. The two offenses here appealed were consolidated on the state's motion. The judgments order the sentences run consecutively. The state concedes error and agrees the sentences should run concurrently. Point of error four is sustained.

Points of error one and five are overruled. Point of error three is sustained, but we do not remand for a hearing because of the disposition of the cause under point of error two. Point of error four is sustained, but we do not reform the judgments to order the sentences run concurrently because of the disposition of the cause under point of error two. Point of error two is sustained and we reverse the trial court's judgments and remand the causes to the trial court with instructions to dismiss the indictments.

REVERSED AND REMANDED WITH INSTRUCTIONS.

WALKER, Chief Justice, concurring.

I concur with the ultimate result reached, that being a reversal of appellant's conviction. However, I would like to add some principles of law that I feel should have been included in the opinion.

With respect to point of error one, Justice Burgess' opinion analyzes with extreme thoroughness the problem raised when an indictment omits language of culpable mental state. His analysis and subsequent holding is well grounded in constitutional, statutory, and case law. While I am in complete agreement with his handling of this issue, I must also state that the dissent presents some very strong points as well. There is clearly more than a little ambiguity in the current status of the law (constitutional, statutory and case law), and until this ambiguity is addressed by our State's highest appellate court, I see little possibility of there being unanimity in decisions from other intermediate appellate courts in this state.

With respect to point of error three, the appellant complains that the trial court erred in refusing to sustain appellant's objection to the State's use of peremptory challenges to exclude black veniremen from serving on the jury. The record is reflective of the fact that appellant is white. This point of error is grounded solely in art. 35.261 of TEX.CODE CRIM. PROC.ANN., Article 35.261 provides:

"(a) After the parties have delivered their lists to the clerk under Article 35.26 of this code and before the court has impanelled the jury, the defendant may request the court to dismiss the array and call a new array in the case. The court *shall* grant the motion of a defendant for dismissal of the array if the court determines that the defendant is a member of an identifiable racial group, that the attorney representing the state exercised peremptory challenges for the purpose of *excluding persons from the jury on the basis of their race,* and that the defendant has offered evidence of relevant facts that tend to show that challenges made by the attorney representing the state were made for reasons *based on race.* If the defendant establishes a prima facie case, the burden then shifts to the attorney representing the state to give a racially neutral explanation for the challenges. The burden of persuasion remains with the defendant to establish purposeful discrimination.

(b) If the court determines that the attorney representing the state challenged prospective jurors on the basis of race, the court shall call a new array in the case." (emphasis added).

The record indicates that the State struck eight out of the nine blacks on the venire. The State offered no explanation for the strikes except for the assertion that art. 35.261 applies only to strikes made against persons of the same race as the appellant.

Appellant contends that *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) does not apply to the circumstances in this case. The State argues that art. 35.261 no more than codifies *Batson* and the Texas case, *Keeton v. State,* 724 S.W.2d 58 (Tex.Crim.App.1987). *Keeton* held, inter alia:

"In order to invoke the protection set forth in *Batson,* supra, a defendant must establish purposeful discrimination by showing that:

1. he was a member of a cognizable racial group;

2. the prosecutor had exercised peremptory challenges to remove from the venire members of the *defendant's race* (peremptory challenges constitute a jury selection practice which permits those to discriminate who are of a mind to discriminate); and

3. the facts and any other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude the veniremen on account of their race." (emphasis added).

There is unmistakably a subtle, but very significant difference in the *Keeton/Batson* language referred to above, and the language of art. 35.261 previously quoted. This writer agrees with Justice Burgess that art. 35.261 permits an accused to establish purposeful discrimina-

tion by showing the State's peremptory challenges were based on race without having to tie together the race of the stricken jurors and the accused. In essence, art. 35.261 partially provides for a racial neutering of the process of peremptory challenges conducted by the State. Since art. 35.261 became effective on August 31, 1987 and *Batson* was decided on April 30, 1986, the legislative intent is obvious. The intent is not only to secure proper due process and equal protection for *the accused* in connection with the jury selection process, but to blaze a trial for these rights to become available for the benefit of *every person sitting on the venire.* Even though *Batson* was not an Equal Protection Clause or Due Process of law challenge, but rather strictly a Sixth Amendment complaint, the end result was, and the United States Supreme Court so found, that the Equal Protection Clause disallows the exclusion of a juror on account of race and that so doing is impermissible discrimination against the excluded juror. To this writer, the intent of the Supreme Court was clearly stated as follows:

"Racial discrimination in selection of jurors harms not only the accused whose life or liberty they are summoned to try. Competence to serve as a juror ultimately depends on an assessment of individual qualifications and ability impartially to consider evidence presented at a trial. (Citation omitted). A person's race simply 'is unrelated to his fitness as a juror.' (Citation omitted). As long ago as *Strauder*, [*v. West Virginia,* 10 Otto 303, 25 L.Ed. 664 (1880)] *supra,* therefore, the Court recognized that by denying a person participation in jury service on account of his race, the State unconstitutionally discriminated against the excluded juror. (Citations omitted).

The harm from discriminating jury selection extends beyond that inflicted on the defendant and excluded juror to touch the entire community."

*Batson, supra* at 87, 106 S.Ct. at 1718.

This language not only supports the opinion of Justice Burgess, but further condemns the practice of racial discrimination by either the State *or the defendant.* If the true intent of *Batson* is only for the accused's use and benefit, then *Batson* actually condones and perpetuates racial discrimination in criminal jury selection by the defendant. Certainly the Supreme Court had no such intent.

It is clear that Article 35.261 speaks only to the defendant's rights to challenge the State's striking of a juror and does not address the rights of a juror to protection from racial discrimination by the defendant. It is nevertheless clear that the intent of *Batson*, and our State Legislature was to eliminate all such discrimination. The above quoted language from *Batson* not only supports the legislative intent of art. 35.261 to eliminate the question of race from the jury selection process entirely, it condemns the practice of racial consideration by either party.

There are at least three very obvious interests affected in the jury trial of any criminal case; none being more deserving or less deserving of equal protection than the other. First, the interest of the accused to be tried by a panel of impartial jurors reflective of a peer group *entitled* to judge the alleged conduct of the accused, and not just those persons who may possess a higher or lower tolerance for the particular crime for which the accused is being tried. If "high or low tolerance of crime" be the touchstone, then the concept of equal protection becomes a farce. It would be pointless to even attempt to address any other interest.

The second equal protection interest finds its basis grounded in the civil rights of each juror called to participate in the jury selection process of a criminal trial. Each and every person on the venire is entitled to be considered as a prospective juror *without* race becoming a significant factor, whether by the State or the defendant. To do otherwise is nothing more than inexplicable and selective gameplay.

The third interest and the one so conveniently ignored since *Batson* is that of "the People", (sometimes referred to as "the State"). I say conveniently ignored because we speak in terms of a "prosecutor"

or the "attorney for the State" which implies that one particular individual cast in the role of a district attorney or assistant district attorney or county attorney is the real party of interest in the overall scheme of jury selection. This is a misconception for, in truth, that particular individual speaks for all the people, and to deny "the prosecution" the same equal protection from racial discrimination in criminal jury selection is to deny that protection to all "the people". If we accept *Batson* as saying "the people" can't racially discriminate against the defendant or jurors, but it is acceptable conduct for the defendant or his counsel to racially discriminate against "the people", then we have selectively accepted, and only partially applied the overall meaning and intent of equal protection. Quoting again from *Batson:*

> "The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror *to touch the entire community*." (emphasis added).

*Batson, supra* at 87, 106 S.Ct. at 1718.

A line of Texas cases dating back to the 19th Century stand for the rather axiomatic proposition that the State is as much entitled to an unbiased, unprejudiced, fair and impartial jury as is the defendant. *Pierson v. State*, 18 Cr.R. 524 (1885); *McGill v. State*, 25 Cr.R. 499, 8 S.W. 661 (1888); *Giebel v. State*, 28 Cr.R. 151, 12 S.W. 591 (1890); *Whithers v. State*, 30 Cr.R. 383, 17 S.W. 936 (1892); *Stockton v. State*, 148 Tex.Crim. 360, 187 S.W.2d 86 (App.1945). Tying that rule of law together with the legislative intent of art. 35.261 and the language from *Batson* quoted above, this concurrence takes the position that the test for determining purposeful racial discrimination as set out in art. 35.261 must be applied to the attorney for the defense as well as to the attorney for the State. If either side gives even the appearance of striking members of the venire solely for racial reasons, the respective attorney should provide non racial reasons to the satisfaction of the trial court. *Batson* provides that the reasons do not have to be purely race neutral, nor do they have to rise to the level of challenges for cause.

To pass constitutional muster, however, along with satisfying the spirit (if not the letter) of *Batson*, art. 35.261 should be applied equally to both parties during jury selection.

This writer is well aware that the Constitution exists to provide individuals with protection against "State action", and unless an individual can show that "the State" has acted in some constitutionally impermissible way to the individual's detriment, then an issue grounded in Constitutional law has not been raised. With respect to the jury selection process, the Texas Legislature has taken "State action" by enacting art. 35.261, which *on its face* provides a remedy only for the defendant. Considering the statute in light of the *Batson* language previously alluded to, as well as the Equal Protection clause, it is terribly underinclusive in its facial scope. It could easily be amended to allow either party to raise the issue of impermissible racial striking. The defendant would be entitled to the same remedy as before. The use of waiver of the right to raise the issue as a sanction against either party for striking jurors solely for race should not be an option for the trial court as it is the stricken juror's rights to be considered as well as those of the defendant and "the people". A juror stricken by either party solely for racial reasons should be allowed to be seated on the jury, and a juror not stricken by the offending party removed. The remedy for the State upon an adverse ruling by the trial court appears quite limited at present. TEX.CODE CRIM.PROC.ANN., art. 44.-01(c) permits the State to appeal a ruling on a question of law if the defendant is convicted in the case and appeals the judgment. It is a thin reed, but a reed nonetheless.

Therefore, I concur with the result reached by Justice Burgess as to appellant's point of error three, but would expand art. 35.261 consistent with the reasons stated above.

BROOKSHIRE, Justice, dissenting.

Respectfully, this dissent is filed. This is a limited dissent. It does not address the

problems of the jury selection or *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) or its progeny. The concurring opinion filed herein by Chief Justice Walker is a very well-reasoned and persuasive opinion.

The people of Texas have amended their State Constitution. *TEX. CONST. art. V, sec. 12(b)* is now a part of the organic law. *Art. V, sec. 12(b)* reads:

"(b) An indictment is a written instrument presented to a court by a grand jury charging a person with the commission of an offense. An information is a written instrument presented to a court by an attorney for the State charging a person with the commission of an offense. The practice and procedures relating to the use of indictments and informations, including their contents, amendment, sufficiency, and requisites, are as provided by law. The presentment of an indictment or information to a court invests the court with jurisdiction of the cause."

The language provides that the practice and procedures relating to the use of indictments, including their contents, their sufficiency, their requisites, are as provided by law. This change is of extreme importance. The last sentence clearly provides that the presentment of an indictment to a court invests that court with jurisdiction of that cause. This amendment was adopted in November of 1985.

Oliver was convicted twice in a consolidated trial for the offenses of possession of the controlled substances. The first controlled substance was phenylacetone in an amount in excess of 400 grams and the second contraband was methamphetamine in the amount of less than 28 grams. The jury assessed punishment at 99 years confinement in the State Department of Corrections plus a $100,000 fine and 20 years confinement in the State Department of Corrections and a $10,000 fine respectively.

The Court holds that the indictments in the cases are simply not indictments. The indictments returned by the Grand Jury, the Court declares, are void. The basic thrust is that since neither indictment alleges in certain words a culpable mental state, then the indictment is fundamentally defective because no offense was charged.

Hence, the Court reasons that, in order to invoke the jurisdiction of the trial court, the charging instruments must allege an offense. The dictat of the Court is that jurisdiction never vested in the trial court and any judgment that was entered was void. The Court maintains that, even under the present Constitution and under the procedural posture of this case, the indictment must allege "intentionally and knowingly".

A very important statutory provision is *TEX. CODE CRIM.PROC.ANN. art. 1.14(a), (b)* (Vernon Supp.1990) reading, in relevant part:

"(a) The defendant in a criminal prosecution *for any offense may waive any rights secured him by law....*

(b) If the defendant does not object to a defect, error, or irregularity of form *or substance in an indictment* or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding...." (Emphasis added)

It is very interesting and of paramount, crucial impact to note that *Art. 1.14(b)* states that if the defendant does not object to a defect, error, or irregularity of form or substance in an indictment—which certainly, by the very clearest language means that the instrument can still be an indictment even if it has a defect, an error, or an irregularity of either form or substance—then that defendant waives and forfeits his right to object on appeal or in any other postconviction proceeding. The Court acknowledges *Art. 1.14* and acknowledges that it is a waiver statute, but simply says it is inapplicable because no offense was ever charged. Of course, the very language of *Art. 1.14(b)* eviscerates that position.

At the top of one of the indictments, it is clearly set out that the State of Texas is versus William Robert Oliver, Jr., and that

the charge is unlawful possession of a controlled substance—phenylacetone.

The indictment charges possession. In common understanding the word "possess", itself, connotes knowledge and even intention to possess that substance. And *TEX.CODE CRIM.PROC.ANN. art. 3.01* provides that words used in the Code are to be taken and understood in their usual accepted and common meaning except where specially defined.

*TEX.CODE CRIM.PROC.ANN. art. 21.-16* (Vernon 1989) provides, in substance, that the following form of indictments is sufficient and then lists in the name and by authority of the State of Texas, the grand jury of the State of Texas organized at a certain term, in the district court of the said county, in the said court and term, do present that the defendant on or about the blank day of blank, in said county and state, did (description of offense); against the peace and dignity of the State, signature line, foreman of the grand jury. *Art. 21.16* does not say that the indictment has to set out in specific words of art each and every detailed description of the offense. The grand jury clearly alleged and set out that Oliver possessed 400 grams or more. Possession, in the Penal Code, has been defined as meaning the actual care, custody, control or management of a substance. If an individual has the actual care, he must know something. If he has the actual custody, he must know something. If he is actually controlling a substance he must have knowledge and intent to possess the same, and if he is actually managing it; that is, moving it around and protecting it, he must have knowledge and intention concerning the 400 grams or more of phenylacetone. Hence, a legitimate position can be taken that this defect was merely a matter of form.

*TEX.PENAL CODE ANN. sec. 6.03* (Vernon 1974), entitled "Definitions of Culpable Mental States", points out that a person acts intentionally or with intent when it is his conscious objective or desire to engage in the conduct or cause the result. This definition, coupled with the definition of possession, shows intent. The

same is true of a person who acts knowingly or with knowledge. *See TEX.PENAL CODE ANN. sec. 6.03(a) and (b)* (Vernon 1974).

In *Shaw v. State*, 728 S.W.2d 889 (Tex. App.—Houston [1st Dist.] 1987, no pet.), Chief Justice Evans wrote, in substance, that there is no longer fundamental error in indictments, if the indictments were presented after December 1, 1985, citing *TEX.CODE CRIM.PROC.ANN. art. 1.14(b)* (Vernon Supp.1987). The indictments in these appeals were presented and filed in September, 1988. *TEX. CONST. art. V, sec. 12(b)* (Vernon Supp.), was in effect in calendar year 1988. *TEX.CODE CRIM.PROC.ANN. art. 1.14(a), (b)* (Vernon Supp.1990), was in effect in calendar year 1988.

In my opinion, the Appellant in both cases, under each of the indictments, did receive a fair and impartial trial. *TEX. CODE CRIM.PROC.ANN. art. 21.02(7)* (Vernon 1989) only requires that the offense be set forth in plain and intelligible words.

I respectfully submit that *TEX.CODE CRIM.PROC.ANN. art. 1.14(b)* (Vernon Supp.1990), upon a reasonable, logical reading, means that there can be a defect or an error or an irregularity of either form or substance in a written instrument and that instrument can still be an indictment. Otherwise, there is no meaningful purpose to *Art. 1.14(b)*. And, further, *Art. 1.14(b)* provides that, unless the defendant objects to the defect in the indictment, that statute clearly and unequivocally, in the strongest and most unambiguous language, provides that the defendant waives and forfeits his right to object to a defect, error, or irregularity of form or of substance and may not raise the same upon appeal unless he objected before the date of the trial. This Appellant failed to timely and properly object.

A scholarly and comprehensive law review article has been written on Texas charging instruments. The article is entitled: "Texas Charging Instrument Law: The 1985 Revisions and the Continuing Need for Reform", by George E. Dix, pub-

lished in volume 38 Baylor Law Review, page 1.

According to Professor Dix, a major objective of the 1985 reforms was the elimination, on the part of defense counsel, of a practice known as "sandbagging". Professor Dix characterized this practice as proceeding with a case despite the presence of reversible error in the charging instrument. Defense counsel, consistent with protecting his client's interest, would only infrequently complain of fundamental defects in the indictment or trial. These defects would probably provide a predictable basis for a reversal of any conviction.

The article, at least in my opinion, seems to agree that the 1985 changes in the Texas Constitution and relevant statutes seemingly abolished fundamental defects in indictments if no objection was made or no motion to quash was filed—neither one having been urged or called to the attention of the trial court.

Hence, the "most blatant form of 'sandbagging'" was thwarted by these reforms. The article lucidly points out that many problems still exist. Nevertheless, a fair reading, I think, of the excellent law review article is that:

> "Amended article 1.14, however, requires that the defense object to a charging instrument defect 'before the date on which the trial on the merits commences'."

And among the matters that are required to be raised, objected to or filed within the statutory period are exceptions or objections to *either the form or the substance of the indictment.*

For the above reasons, I dissent with respect.