Shawn Ray HOWARD, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–96–00763–CR.

Court of Appeals of Texas, San Antonio.

Oct. 28, 1998.

Edward Camara, San Antonio, for Appellant.

Barbara Hervey, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Before HARDBERGER, C.J., and LÓPEZ and ANGELINI, JJ.

## OPINION

ANGELINI, Justice.

### Nature of the Case

A jury found Shawn Ray Howard guilty of the offenses of aggravated sexual assault, aggravated robbery, and burglary of a habitation. The jury assessed punishment at 99 years confinement for each offense. In his

first and second issues, Howard alleges that the court erred in denying his motion for mistrial and his motion for new trial based upon the discovery that a juror was the step-mother of a victim of an extraneous offense. In his third issue, Howard argues that the court erred in denying his motion for new trial based on jury misconduct because it was shown that the jury based its verdict on facts outside the record. In his fourth issue, Howard alleges that the court erred in admitting hearsay testimony of a State's witness.

### Factual background

In this case, Howard was tried for the sexual assault and robbery of Shirley McFall. The evidence showed that McFall was an elderly woman who lived alone in a Northside apartment. According to McFall, a noise awoke her in the middle of the night. She saw a strange man in her apartment who came toward her, put a pillow over her head, and forcefully penetrated her sexual organ. The man took some money out of McFall's purse before leaving her apartment. Police encountered Howard near the scene of the crime and identified him as the perpetrator. DNA evidence also implicated Howard as the perpetrator. At the time of trial, Howard had been indicted for three other sexual assault and robbery offenses. The other offenses were committed in the same part of the city and in a similar manner.[1]

### Juror Helms

In his first and second issues, Howard alleges that the court erred in denying his motion for mistrial and motion for new trial based upon the discovery that a juror was the step-mother of a victim of one of the other indicted offenses. We review a denial of a mistrial and motion for new trial under the abuse of discretion standard. *Kipp v. State*, 876 S.W.2d 330, 339 (Tex.Crim.App. 1994) (mistrial); *State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex.Crim.App.1993) (motion for new trial). The juror in question is Diana Helms. Juror Helms was qualified as a venire member under the name Diana Vasquez

---

1. These crimes were publicized in the media and the perpetrator was known as the "Northside rapist" or the "Churchill rapist."

Hernandez which was her name prior to marrying Dennis Helms. Dennis Helms is the father of Corrie Helms, who is named as the complainant in one of the other sexual assault and robbery cases. The State first mentioned the name of Corrie Helms during its opening argument at the punishment phase of trial. The State made the following argument:

> The next case you're going to hear about involved a complainant by the name of Corrie Helms. Corrie Helms was 13 years old at this time. She was living with her mother and her brother and her stepfather in an apartment close to where he was living. Corrie's parents went out that night, and she was awakened at about 2:00 o'clock in the morning to somebody walking in with a cigarette lighter in her bedroom. And this person came in through her mother's window that had been left open. She's going to describe this Defendant to you. She's going to tell you what he did to her. He came in asking for money, and then he got her on the bed and he raped her anally. He went out the window. She is going to identify this Defendant to you, the person that raped her. She went to the hospital, had a sexual assault exam. They took a rectal swab from her anus. And low and behold, the presence of this man's semen was found on that rectal swab.

The prosecutor also told the jury that they would hear testimony concerning the two other offenses for which Howard had been indicted.

Shortly after the opening statements at the punishment phase, Juror Helms told the bailiff that she was Corrie Helms's stepmother. The prosecutor was informed of this development and immediately brought the information to the court's attention. Defense counsel made a motion for mistrial arguing that due to the nature of the relationship between the extraneous offense victim and the juror, Howard would be denied a fair and impartial jury. The court called Juror Helms to take the stand. Juror Helms testified that Corrie Helms was her stepdaughter but that she had not relayed that information to any of the other jurors and

several jurors testified at the motion for new trial hearing that they were not aware that Juror Helms was Corrie Helms's step-mother during deliberations. Juror Helms testified that she had not been aware that Corrie Helms had been sexually assaulted. The prosecutor asked Juror Helms, "when I made my opening statement this morning on the punishment phase, is that the first time that you heard about Corrie Helms being raped?" Juror Helms said "yes" in response to the question. Juror Helms testified that she could still be fair and impartial. The court overruled Howard's motion for mistrial and instructed Juror Helms not to tell any of the other jurors that she was Corrie's stepmother. The State did not call Corrie Helms as a witness and never mentioned her name again.

The State argues that defense counsel has an obligation to ask questions calculated to bring out information which might indicate a juror's inability to be impartial. *See Armstrong v. State*, 897 S.W.2d 361, 363 (Tex. Crim.App.1995). During voir dire, defense counsel asked the panel if any family members or close friends had been the victim of a violent crime. Diana Helms raised her hand and said that her uncle, a retired police officer, had been assaulted during a traffic stop. If Diana Helms had known about the sexual assault of Corrie Helms during voir dire, she would have withheld material information. When a juror withholds material information during voir dire, the parties are denied an opportunity to exercise their challenges wisely which hurts selection of a disinterested and impartial jury. *Id.* However, according to Diana Helms, she first learned of the offense during the State's opening argument in the punishment phase.

During voir dire, defense counsel also asked the jury panel if they knew any of the witnesses who would be called to testify.

[DEFENSE]: ... the next question I would have is does anyone know—Do you [State] have a witness list? I have it somewhere.
[STATE]: Do you want me the [sic] call them out and see if they know anybody?
[DEFENSE]: That's what I was going to do.

[STATE]: Let me do that.

[DEFENSE]: What we're going to do is just ask you if you recognize any of these names that he reads, without saying which one it is; but if anybody recognizes any names, just stop us so I can write down the number, if you know any of these people.

The State proceeded to read the names of twenty witnesses, but Corrie Helms was not one of the names read to the jury. During the motion for new trial hearing, the prosecutor testified that he only read the witness list for the State's case-in-chief. The record shows that none of the names of the punishment phase witnesses were read to the jury during voir dire.

In this case, defense counsel asked the right question to determine whether any of the venire members knew any of the witnesses. The State then took over the responsibility of reading the witness list but did not read Corrie Helms's name because only the witnesses for the case-in-chief were read. However, defense counsel did not inquire about whether the witnesses read to the jury included punishment phase witnesses. Thus, defense counsel and the State both contributed to the omission of Corrie Helms's name being read during voir dire, which presumably would have prompted Juror Helms to respond that she recognized the name and would have circumvented the issue before us. Under these unique facts, we decline to accept the State's argument that defense counsel's failure to ask the right question ends our inquiry into whether Howard received a fair and impartial jury.

■ The Sixth Amendment of the United States Constitution and article I, section 10 of the Texas Constitution guarantees the accused the right to a fair trial before an impartial jury. Although Juror Helms testified that she could be fair and impartial, based on the unique facts in this particular case we do not believe that Juror Helms could be fair and impartial upon learning that her step-daughter had been sexually assaulted by the defendant, especially in light of the details of the offense given in the State's opening argument. We think that it would be contrary to human nature for Juror Helms not to resent such treatment inflicted upon her step-daughter by the defendant. *See Stockton v. State,* 148 Tex.Crim. 360, 187 S.W.2d 86, 90 (1945) (stating that against human nature for juror who was nephew of extraneous offense victim to not resent treatment of uncle). We acknowledge that the court and the State took steps to minimize the impact of the relationship, but Juror Helms had already learned that Howard allegedly raped her step-daughter and, upon learning such information and based on these facts, she could no longer be unbiased and impartial. Thus, we find that the court erred in not granting Howard's motion for mistrial. Further, we cannot say beyond a reasonable doubt that the error did not contribute to his punishment. TEX.R.APP. P. 44.2(a). We sustain Howard's first issue.

■ Because Diana Helms testified that the State's opening argument during the punishment phase of trial was the first time she heard of her step-daughter's assault, we find that Diana was not biased or impartial during the guilt-innocence phase of trial. Thus, having found that the error only affected the punishment phase of trial, we reverse and remand for a new trial on punishment only. TEX.CODE CRIM. PROC. ANN. art. 44.29(b) (Vernon Supp.1998).

Because we have found that the court erred in not granting a mistrial we need not consider Howard's second issue urging that the court erred in denying his motion for new trial on the same basis. We also do not reach Howard's fourth issue, in which he alleges that the court erred in admitting the hearsay testimony of a witness during the punishment phase as we are reversing the case for a new punishment hearing. We will address Howard's third issue because he complains of jury misconduct during the guilt-innocence portion of trial as well as the punishment phase.

### Jury misconduct

■ In his third issue, Howard alleges that the court erred in denying his motion for new trial because the jury based its verdict on facts outside the record. At the motion for new trial hearing, Juror Michael

Miller testified that he thought he had heard defense counsel refer to Howard as a habitual criminal during the closing argument of the guilt-innocence phase of trial. When asked whether the jury considered that Howard was a habitual criminal during deliberations, Miller responded, "We considered it from the standpoint of the statement that the defense attorney made, but that was it." According to Miller, the jury never deliberated on the statement and did not consider it as evidence. Juror Joann Herrera testified that she heard some of the jurors say that defense counsel had said that Howard was a habitual criminal. Herrera testified that the discussion about Howard being a habitual criminal was not long and she could not remember whether it was during the guilt-innocence phase of trial or the punishment phase. Dewey Rykard, the jury foreman, testified that the jurors discussed habitual criminal conduct after the guilt-innocence portion of the trial. Juror Rykard testified that they only considered the evidence introduced at trial.

Although the record does not show that defense counsel referred to Howard as a habitual criminal, the defense took the position that Howard committed the robbery and burglary offenses but did not commit the offense of aggravated sexual assault. The State offered evidence of extraneous offenses during the punishment phase. Thus, we do not find that discussion of Howard as a habitual criminal was jury misconduct. Based on the jurors' testimony, we do not find that the jury based its verdict on facts outside the record. The court did not abuse its discretion by denying Howard's motion for new trial based on jury misconduct. We overrule Howard's third issue.

We reverse the judgment and remand the case for a new trial on punishment only.