**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 93-4151
_____

MAURICE ANDREWS,

                              Petitioner-Appellant,

versus

JAMES A. COLLINS, Director,
Texas Department of Criminal Justice,
Institutional Division,

                              Respondent-Appellee.

_____

Appeal from the United States District Court
For the Eastern District of Texas
_____

(May 13, 1994)

Before GARWOOD, JONES, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Maurice Andrews was convicted by a jury of capital murder and sentenced to death. His conviction and sentence were affirmed on direct appeal. After his petition for habeas corpus relief in the Texas Court of Criminal Appeals was denied, Andrews filed a petition for habeas corpus relief in federal district court, pursuant to 28 U.S.C. § 2254 (1988). The district court denied the petition. Andrews now appeals the district court's decision, presenting over twenty claims of error. We affirm.

**I**

**A**

On April 8, 1982, two men robbed Granado's Jewelry Store in Beaumont, Texas.[1]  During the robbery, Joe Granado, the store owner, was shot once in the head by a small caliber pistol and once with a .38 caliber pistol;  Arturo Melindez, a store employee, also was shot in the head and killed.  Luisa Morales, an employee of the business located next to the jewelry store, testified that, after hearing gunshots, she saw two black men leaving the shop "real fast."[2]  The only significant evidence police officers found at the scene was a black cap decorated with a white Playboy bunny emblem.

Daisy May White, who lived at co-defendant Malcolm Davis' house, testified that Andrews came to the residence on the morning the murders occurred.  Andrews wore a "dark brown" shirt and a "black [cap] with a white Playboy bunny in the front."  Andrews and Davis, who wore a dark red baseball cap, left the house approximately two hours before Granado and Melindez were killed.  Andrews, Davis, and Elliott Johnson returned to the house about

---

[1]      We present only the facts necessary for an understanding of the issues presented on appeal.  A more detailed review if the facts may be found in the Texas Court of Criminal Appeals' opinion affirming Andrews' conviction on direct appeal. *Andrews v. State*, 744 S.W.2d 40 (Tex. Crim. App. 1987), *cert. denied*, 488 U.S. 871, 109 S. Ct. 182, 102 L. Ed. 2d 157 (1988).

[2]      Morales described one of the men as being slightly over six feet tall and wearing a chocolate brown jacket, "like a type of shirt."  The second man was shorter and wore a red baseball cap.

forty-five minutes after the robbery occurred.[3]  While at Davis' residence, Andrews retrieved a bag, a towel, and some clothes from Davis' car, which was parked in the garage.  When Andrews reentered the house, White observed that he had a "medium-sized" pistol))which she had seen Andrews carry on previous occasions))tucked into his pants.  White also observed "lots of jewelry" wrapped up in the towel that Andrews had retrieved from the car.  Later, Davis gave his wife the pistol he had been carrying, which was smaller than Andrews' gun, and told her to clean it.  Davis also told her that "we had to shoot those guys or they would have killed us."  Davis' wife subsequently placed the pistol Andrews had been carrying, several envelopes, and a red baseball cap in a storehouse located in their backyard.

Gloria Mae Thomas testified that she accompanied Andrews))who was wearing a black Playboy bunny cap))Davis, and a third man to the residence of Charles Chapman in Houston two days before the robbery-murders occurred.  On that trip, Davis inquired whether Chapman wanted to purchase or knew where he could fence "about $20,000 worth of jewelry."  When Chapman requested to see the jewelry, Davis replied that he would let Chapman "see it later on."

---

[3]    Johnson was convicted of capital murder and sentenced to death.  *See Johnson v. State*, 691 S.W.2d 619 (Tex. Crim. App. 1984), *cert. denied*, 474 U.S. 865, 106 S. Ct. 184, 88 L. Ed. 2d 152 (1985).  Malcolm Davis pled guilty to a charge of aggravated robbery and was sentenced to life imprisonment.  *See Andrews*, 744 S.W.2d at 41 n.1.  The prosecution's theory in Andrews' trial was that Andrews and Johnson were the triggermen and Davis drove the getaway car.  The defense's theory was that Davis and Johnson were the triggermen.

Thomas also testified that Andrews often talked about committing robberies and told her that "he wouldn't leave nobody around to talk about it" if he ever "pulled a big robbery." Chapman's testimony supported that given by Thomas. Additionally, Chapman stated that Andrews carried a .38 caliber pistol while in Houston.

After Andrews and Davis were arrested,[4] police officers obtained a warrant to search Davis' residence. During the search, they recovered a .38 caliber pistol, an envelope with "Granado Jewelry" on it, the bill of a red baseball cap that had been burned, and one ring. During a search of Andrews' residence, again pursuant to a warrant, officers found a large amount of jewelry hidden in the refrigerator. Tests demonstrated that the .38 caliber pistol recovered by police fired the shots that killed Granado and Melindez. Lynn Baldwin, Granado's stepson, identified the seized envelope as being of the same type used by Granado to secure jewelry left at the store by customers. He further identified one of the rings found in Andrews' residence as being Granado's personal ring. Blain Coleman identified a second ring found at Andrews' residence as being a ring that he left at Granado's store for repairs prior to the robbery. Patricia Stine

---

[4] When arrested, Andrews was wearing a black cap with a white Playboy bunny on it. Andrews thus concludes that it could not have been his cap that police found at the murder scene. However, Mildred Mayon, an employee of the Super Bad Shop, testified that Andrews had purchased such a cap on the afternoon of the murders. The prosecution argued at trial that Andrews purchased the second Playboy cap to "cover his tracks"))i.e., because he had lost his cap while fleeing from Granado's store.

and Rolanda Russell testified that several items of jewelry seized at Andrews' residence "matched up" with items that their companies had delivered to Granado's Jewelry Store.  Many of the items taken from the store, however, were never recovered.  A jury found Andrews guilty of the capital murder of Joe Granado.

**B**

In accord with the capital sentencing statute then in effect,[5] Andrews's jury was instructed at the punishment phase of his trial that it was to answer three "special issues":

> (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

> (2) whether there is a reasonable probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society;  and

> (3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

Tex. Code Crim. Proc. Ann. art. 37.071(b) (Vernon 1981).  Because the jury unanimously answered each question in the affirmative, the trial court sentenced Andrews to death.  *See id*. art. 37.071(e). The Texas Court of Criminal Appeals affirmed Andrews' conviction and sentence.  *Andrews*, 744 S.W.2d 40.

In November 1988, Andrews, represented by counsel, sought postconviction relief in the Texas state courts.  After an

---

[5]    Texas amended its capital punishment statute in 1991. *See* Tex. Code Crim. Proc. Ann. art. 37.071 (Vernon Supp. 1993).

evidentiary hearing regarding six of Andrews' thirty-seven claims,[6] the state habeas court, which also had been the trial court, entered findings of fact and conclusions of law recommending that relief be denied. The Court of Criminal Appeals, finding the trial court's findings and conclusions to be supported by the record, subsequently denied relief. Andrews then petitioned for a writ of habeas corpus in federal district court pursuant to 28 U.S.C. § 2254, raising twenty-seven claims of error. The district court denied relief and granted Andrews' petition for a certificate of probable cause to appeal. Andrews now raises a plethora of claims on appeal.

## II

Andrews first levels a general challenge to the state court's findings of fact, arguing that four of the exceptions to the presumption of correctness enumerated in § 2254(d) are applicable.[7]

---

[6] The state court heard evidence pertaining to Andrews' claims that: (1) he was incompetent to stand trial; (2) the prosecution discriminatorily exercised its peremptory challenges; (3) the prosecution failed to disclose exculpatory and material evidence; (4) his trial counsel rendered ineffective assistance during the guilt-innocence phase of his trial; (5) his trial counsel rendered ineffective assistance during the punishment phase of his trial; and (6) imposition of the death penalty would be cruel and unusual because he was mentally retarded.

[7] 28 U.S.C. § 2254, in relevant part, provides:

(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties,

-6-

Andrews' challenges can be grouped into two categories: those based on the inadequacy of the procedures or other aspects of the state hearing (exceptions under §§ 2254(d)(2), (3) and (6)) and those based on the merits of the state court's findings (exceptions under § 2254(d)(1)).

**A**

The first category of challenges requires us to determine whether certain alleged procedural irregularities at the hearing rendered the presumption inapplicable. *E.g.*, *Black v. Collins*, 962 F.2d 394, 400 (5th Cir.), *cert. denied*, ___ U.S. ___, 112 S. Ct. 2983, 119 L. Ed. 2d 601 (1992). Andrews specifically contends that the state court "refused to allow [him] to conduct any discovery and also refused to provide [him] with the means to present all of the evidence that supported [his] claims." Andrews, however, fails to cite any authority supporting his contentions.[8]

---

evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit))
> (1) that the merits of the factual dispute were not resolved in the State court hearing;
> (2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;
> (3) that the material facts were not adequately developed at the State court hearing;
> . . . .
> (6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding . . . .

[8] Andrews does cite *Harris v. Nelson*, 394 U.S. 286, 89 S. Ct. 1082 (1969). *Harris*, however, merely held that a federal

Texas law leaves discovery decisions to the sound discretion of the habeas court. *See* Tex. Code Crim. Pro. Ann. art. 11.07(2)(d) (West Supp. 1994) (stating that "the court *may* order affidavits, depositions, interrogatories, and hearings, as well as using personal recollection" to resolve "controverted, previously unresolved facts") (emphasis added). In federal court, "[d]iscovery decisions in habeas proceedings . . . [also] are left entirely to the sound discretion of the district court." *Duff-Smith v. Collins*, 973 F.2d 1175, 1180 (5th Cir. 1992), *cert. denied*, ___ U.S. ___, 113 S. Ct. 1958, 123 L. Ed. 2d 661 (1993); *see also* 28 U.S.C. § 2254, Rule 6 (governing the availability of discovery in federal habeas proceedings); *Willie v. Maggio*, 737 F.2d 1372, 1395 (5th Cir.) (holding that the district court did not abuse its discretion in denying motion for discovery), *cert. denied*, 469 U.S. 1002, 105 S. Ct. 415, 83 L. Ed. 2d 342 (1984). Moreover, Andrews wholly fails to explain how the state court "refused to provide [him] with the means to present all of the evidence." *E.g.*, *Smith v. Estelle*, 711 F.2d 677 (5th Cir. 1983) (noting that a habeas applicant need not be given the opportunity to present live testimony), *cert. denied*, 466 U.S. 906, 104 S. Ct. 1685, 80 L. Ed. 2d 159 (1984). Finally, in reviewing the record, we note that the state court allowed Andrews to present evidence and witnesses, to fully cross-examine witnesses called by the

---

district court may authorize discovery if "it is necessary to do so in order that a fair and meaningful evidentiary hearing may be held." 394 U.S. at 300, 89 S. Ct. at 1091.

state, and, after the hearing's conclusion, to submit affidavits from two persons who did not appear at the hearing. Accordingly, we conclude that Andrews received a full and fair hearing.

**B**

The second challenge raised by Andrews requires us to determine whether the state court actually resolved the factual issues presented by Andrews' petition. Andrews contends that although he filed an amended petition "conform[ing] his allegations to the evidence presented at the hearing," the state habeas court's factual findings tracked the allegations raised in his original state petition. Andrews neglects to mention, however, that the state court refused to consider Andrews' "extremely belated" amended petition because it found that Andrews had abused the habeas corpus process by filing the petition. Moreover, Andrews does not challenge that finding. Consequently, we conclude that the state court actually resolved the merits of all disputed factual issues presented by Andrews' habeas petition.[9]

---

[9] Additionally, the only example cited by Andrews in support of his contention that the state habeas court did not resolve the merits of factual disputes relates to Andrews' claim that his counsel was ineffective for failing to introduce in evidence the results of DNA tests ran on a hair found in the black Playboy cap left at the scene of the murders. Andrews original state habeas petition alleged that the prosecution failed to inform counsel of the test results. However, Andrews' trial counsel testified at the evidentiary hearing that the prosecution had produced the test results. Thus, the state habeas court rejected Andrews' claim. Andrews' amended petition, which the state court refused to consider, contended that trial counsel's failure to inform the jury of the test results constituted ineffective assistance. Because we determine whether counsel rendered effective assistance based on the totality of the circumstances,

-9-

Andrews argues that the district court erred in presuming correct the trial court's finding that he was competent to stand trial because he did not receive a full and fair hearing and the material facts were not adequately developed at the hearing that was held. *See* 28 U.S.C. § 2254(d)(2), (3), (6). Accordingly, Andrews urges us to reverse the judgment of the district court and remand for a new evidentiary hearing.

The § 2254(d) presumption of correctness is not rendered inapplicable merely because the state habeas court did not allow Andrews to conduct discovery before it held the evidentiary hearing. *See* part II.A. *supra*. Moreover, the record indicates that the material facts pertaining to Andrews' incompetency claim were adequately developed during the hearing.[10] Consequently, we conclude that the state habeas court afforded Andrews a full and fair hearing, that the state court's finding that Andrews was competent to stand trial was entitled to the presumption of

---

and because we do not presume correct the state court's determination that counsel rendered effective assistance, Andrews is not harmed by the state court's failure to address his amended claim because we necessarily examine all evidence produced that bears on the ineffective assistance claim. *See* part VI.A. *infra*.

[10] Andrews presented testimony from two psychologists suggesting that he is mildly mentally retarded. A psychiatrist for the state, on the other hand, testified that Andrews was competent to stand trial, and Andrews' trial attorneys both testified that they had no reason to believe that Andrews was incompetent at the time of trial. Finally, the state habeas court, relying on its observation of Andrews throughout the trial, found that Andrews was competent to stand trial.

correctness, and that the district court was not required to conduct a second evidentiary hearing.

**IV**

Andrews contends that the trial court erred by not reopening voir dire after defense counsel learned that one of the jurors was related to Joe Granado, the victim. Shortly before trial was to begin, the prosecution informed defense counsel that juror Curtis Tomplait's daughter had been married to the victim's grandson, who was deceased at the time of trial.[11] Defense counsel then moved for a mistrial or, alternatively, to reopen voir dire and question Tomplait as to his relationship to the victim. The trial court denied both requests. Andrews argues that the trial court thus "forced him to present his case before a juror with an apparent bias against him, in violation of . . . the Sixth, Eighth, and

---

[11] The prosecution further informed defense counsel that Granado's grandson had been employed by the Jefferson County Sheriff's Department. To the extent Andrews' argument rests on Tomplait's "failure to disclose his relationship to a law enforcement employee," the written questions provided to Tomplait did not require him to disclose that his deceased son-in-law had been employed by a law enforcement agency. *See Baca v. Sullivan*, 821 F.2d 1480, 1482-83 (10th Cir. 1987) (no new trial required when juror failed to disclose that his brother was a retired police officer because voir dire questions inquired only about relatives presently in law enforcement); *De la Rosa v. Texas*, 743 F.2d 299, 306-07 (5th Cir. 1984) (no new trial required where voir dire questions did not directly solicit the information upon which the bias claim rested), *cert. denied*, 470 U.S. 1065, 105 S. Ct. 1781, 84 L. Ed. 2d 840 (1985). Moreover, we will not impute bias merely because Tomplait's former son-in-law had worked for a law enforcement agency. *See Tinsley v. Borg*, 895 F.2d 520, 529 (9th Cir. 1990), *cert. denied*, 498 U.S. 1091, 111 S. Ct. 974, 112 L. Ed. 2d 1059 (1991).

Fourteenth Amendments."  At bottom, Andrews' contention is that we must, as a matter of law, impute bias to juror Tomplait.[12]

As an initial matter, we note that "[t]he Supreme Court has never explicitly adopted or rejected the doctrine of implied bias." *Tinsley*, 895 F.2d at 527.  Moreover, the Court has not looked favorably upon attempts to impute bias to jurors.  *E.g., Smith v. Phillips*, 455 U.S. 209, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982) (refusing to impute bias to a juror where the juror sought employment with the prosecutor's office during trial);  *Remmer v. United States*, 347 U.S. 227, 74 S. Ct. 450, 98 L. Ed. 654 (1954) (attempted bribe of juror did not require a finding of implied bias).  However,

> there are some *extreme situations* that would justify a
> finding of implied bias.  Some examples might include a
> revelation that the juror is an actual employee of the
> prosecuting agency, *that the juror is a close relative of*

---

[12]  Andrews does not contend on appeal that Tomplait was *actually* biased:

> [T]he only evidence necessary to support [the claim of
> bias] is the undisputed fact that Juror Tomplait was
> related to the victim and to a law enforcement
> employee. . . .  Andrews' position is based on the
> undisputed fact that Juror Tomplait was related to the
> victim and to a law enforcement employee, which gives
> rise to "implied" or "presumed" bias under controlling
> precedent.  No further evidence was necessary. . . .
> Andrews does not need an evidentiary hearing to develop
> the material facts . . . [because] those facts are
> undisputed.

Andrews' Rebuttal Brief at 8-9.  Thus, Andrews has not presented any evidence as to the length of the marriage between Tomplait's daughter and Granado's grandson, when the marriage ended, the relationship between Granado and his grandson or Tomplait and his daughter, or even whether Granado and Tomplait had ever met.

> *one of the participants in the trial or the criminal transaction*, or that the juror was a witness or somehow involved in the criminal transaction.

*Smith*, 455 U.S. at 222, 102 S. Ct. at 948 (O'Connor, J., concurring) (emphases added); *see United States v. Scott*, 854 F.2d 697, 699 (5th Cir. 1988) (same).

Based on the record before us, we do not believe that Tomplait's presence on the jury deprived Andrews of his right to present his case to an impartial jury. First, when asked during individual voir dire whether he knew of "any reason [why he] could not be a fair and impartial juror," Tomplait replied that he did not. Second, Tomplait was not at any time directly related to the victim, and his daughter's relationship with the victim's grandson had ended prior to the time of trial. Third, Andrews does not allege that the grandson was alive when the victim was killed. Fourth, the record contains no evidence suggesting that Tomplait, at the time of trial, even knew he had at one time been related to Granado.[13] Finally, there is absolutely no evidence suggesting that Tomplait's "tenuous relationship"))as described by the state habeas court))had any effect on the proceedings.[14] Accordingly, we refuse

---

[13]     Andrews argues that the trial court's erroneous refusal to reopen voir dire "effectively destroyed the only opportunity defense counsel had to ask questions regarding Juror Tomplait's relationship to the victim." However, because Andrews' arguments pertaining to Tomplait were relevant to his ineffective assistance claim, Andrews' current counsel had the opportunity to present evidence regarding Tomplait))not limited to Tomplait's testimony))during the evidentiary hearing but failed to do so.

[14]     In *Scott*, the prospective juror "consciously censored the information" available to counsel, thereby giving rise to "a strong

to impute bias to juror Tomplait.  *See Jones v. Butler*, 864 F.2d 348, 362 (5th Cir. 1988) (trial court correctly denied a defense challenge for cause to a prospective juror who "had lived near the victim and knew her by sight, had visited the funeral home to view her body, . . . , and had worked [ten] years earlier as a hospital lab clerk for a doctor who testified for the State"), *cert. denied*, ___ U.S. ___, 112 S. Ct. 8, 115 L. Ed. 2d 1093 (1991);  *Howard v. Davis*, 815 F.2d 1429, 1431 (11th Cir.) (no new trial when trial court refused to excuse juror who was a "close friend" of the murder victim), *cert. denied*, 484 U.S. 864, 108 S. Ct. 184,, 98 L. Ed. 2d 136 (1987).

## V

Andrews complains that the prosecution utilized its peremptory challenges in a racially discriminatory manner, violating *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).[15] The record reflects that Andrews' counsel did not raise a *Batson*-type objection at trial.[16]  Andrews' failure to timely object at

---

inference that [the juror] wanted to serve on [the] jury and thought it unlikely that the court or defense counsel would permit him to do so."  854 F.2d at 699.  Here, on the other hand, Tomplait answered all questions truthfully, and Andrews has failed to point to any evidence contained in the record giving rise to such an inference.

[15]    In *Batson*, the Supreme Court held that "[t]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race."  476 U.S. at 86, 106 S. Ct. at 1719.

[16]    Andrews was convicted and sentenced in 1982, while *Batson* was decided in 1986.

trial to the prosecutor's use of his peremptory challenges is a constitutional bar to his *Batson* challenge. *Harris v. Collins*, 990 F.2d 185, 187 (5th Cir.), *cert. denied*, ___ U.S. ___, 113 S. Ct. 3069, 125 L. Ed. 2d 746 (1993); *Wilkerson v. Collins*, 950 F.2d 1054, 1063 (5th Cir. 1992), *cert. denied*, ___ U.S. ___, 113 S. Ct. 3035, 125 L. Ed. 2d 779 (1993).

Andrews attempts to circumvent the federal contemporaneous-objection rule by asserting that the rule "has no application to the present case because the state [habeas] court conducted a full-blown evidentiary hearing on the *Batson* claim." However, "the fact that the state habeas court later considered on the merits the prosecutor's alleged racial use of peremptory challenges does not cure the defect, fatal to federal review, of failure to object timely to the peremptory strike." *Harris*, 990 F.2d at 187; *see also Wilkerson*, 950 F.2d at 1063; *Jones*, 864 F.2d at 369-70. Accordingly, review of Andrews' *Batson* claim is barred and we need not address the merits of the claim.

## VI

Andrews asserts that he received ineffective assistance of counsel during the guilt-innocence and punishment stages of his trial and on direct appeal of his conviction, thereby violating his Sixth Amendment right to counsel. We review a claim of ineffective assistance under the standards announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "First, a defendant must demonstrate that

`counsel's representation fell below an objective standard of reasonableness,' with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance." *Black*, 962 F.2d at 401 (quoting *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064). In reviewing an ineffective assistance claim, we must "judge[] the conduct of the defense according to the objective standard of the reasonable attorney," *Kyles v. Whitley*, 5 F.3d 806, 819 (5th Cir. 1993), *petition for cert. filed*, ___ U.S.L.W. ___ (U.S. Feb. 10, 1994) (No. 93-7927), and "give great deference to counsel's assistance, strongly presuming that counsel has exercised reasonable professional judgment." *Ricalday v. Procunier*, 736 F.2d 203, 206 (5th Cir. 1984). Accordingly, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91, 104 S. Ct. at 2066. Second, if counsel was ineffective, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to

undermine confidence in the outcome."[17]  *Id.* at 694, 104 S. Ct. at 2068.

**A**

Andrews argues that his appointed counsel at trial))Walter Sekaly and Harold Laine, Jr.))rendered ineffective assistance at the guilt-innocence stage of his trial for several reasons. First, Andrews contends that counsel should have put into evidence the results of a forensic test administered to a hair found in the black cap discovered at the murder scene;  Andrews contends that the results demonstrate that the Playboy cap did not belong to Andrews, and, therefore, that he could not have left it at the scene of the crime.  Andrews' defense at trial was that Malcolm Davis and Elliott Johnson were the triggermen, and it is undisputed that Johnson was the shorter man wearing the red cap whom Morales saw fleeing the scene.  Andrews thus contended during closing arguments that the taller man described by Morales was Malcolm Davis.  The results of the hair test, however, indicated that the hair found in the cap matched neither that of Davis nor of Andrews.  Thus, while the test results may have provided some assistance to Andrews, they also would have undermined his defense that it was

---

[17]     "[A] state court's ultimate conclusion that counsel rendered effective assistance is not a fact finding to which a federal habeas court must grant a presumption of correctness under 28 U.S.C. § 2254(d), but instead is a mixed question of law and fact." *Black*, 962 F.2d at 401.  "However, any subsidiary factual findings made by a state court in the course of determining that effective assistance was rendered is entitled to the § 2254(d) presumption," absent some reason for not applying the presumption. *Id.*

Davis who murdered Granado. Consequently, counsel's decision not to bring the test results to the attention of the jury was not unreasonable.

Andrews next points to counsel's error in not using a police report to attack Mayon's credibility regarding her identification of Andrews as the purchaser of the new Playboy cap. Detective Charles Little's report, however, would not have impeached Mayon because it did not contradict any aspect of Mayon's testimony. While the report states that the owner of the store could not identify Andrews as the person who purchased the black cap on the day of the murder, Mayon testified that it was the manager's wife)) not the owner of the store))who sold Andrews the cap. Thus, whether the owner could or could not identify Andrews is irrelevant.[18]

Andrews further argues that counsel erred by not attacking the credibility of Morales. Andrews contends that her testimony could have been impeached by two newspaper articles, one of which stated that she told a reporter she did not see anyone leaving Granado's store and the second of which reported that Beaumont Police

_____

[18] Andrews also claims counsel erred by not informing the jury that Detective Little stopped two black men near the jewelry store shortly after the robbery who had nothing to do with the crime. However, the men stopped by Little bore no resemblance to the suspects described by Morales other than the fact that one of them wore a red cap. Moreover, assuming arguendo that counsel was ineffective for failing to bring this fact to the attention of the jury, Andrews has failed to demonstrate that there is a reasonable probability that the result of his trial would have been different had counsel introduced this evidence.

Lieutenant Bruce Thomason said Morales saw two men wearing blue jeans leaving the scene. Assuming arguendo that counsel was ineffective, Andrews has failed to demonstrate that there is a reasonable probability that, had counsel questioned Morales about the articles, the result of the proceeding would have been different.

Andrews next contends that counsel committed error of constitutional dimension by failing to make a *Batson*-type objection to the prosecution's use of its peremptory challenges to strike blacks from the jury. In *Swain v. Alabama*, 380 U.S. 202, 220-26, 85 S. Ct. 824, 835-39, 13 L. Ed. 2d 759 (1965), the Supreme Court held that the systematic use by prosecutors of peremptory challenges to strike black jurors on account of race violated the Equal Protection Clause.[19] We previously have held that the decision in *Swain* provided defendants with the tools to construct a *Batson* claim prior to the decision in *Batson*. *See Jones*, 864 F.2d at 364. Pre-*Batson* Texas courts, however, routinely rejected such claims. *See, e.g., Evans v. State*, 622 S.W.2d 866 (Tex. Crim. App. 1981); *Metters v. State*, 695 S.W.2d 88, 89 (Tex. Ct. App.))Houston [1st Dist.] 1985). Consequently, counsel was not ineffective for failing to raise a claim that Texas courts repeatedly had rejected. *Cf. Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.) ("The Constitution does not require appellate counsel to

_____

[19]     No *Swain* objection was made at trial and the record does not contain any evidence supporting such an objection.

-19-

raise every nonfrivolous ground that might be pressed upon appeal."), *cert. denied*, 493 U.S. 970, 110 S. Ct. 419, 107 L. Ed. 2d 384 (1989).

**B**

Andrews next submits that he was denied effective assistance of counsel at the punishment stage of his trial because counsel failed to investigate factors in his background that would have produced "highly probative" mitigating evidence. Andrews asserts that had counsel made such an investigation, they would have discovered substantial mitigating evidence.[20] Andrews further contends that this failure to investigate and present mitigating evidence renders the outcome of the punishment phase unreliable.

**1**

We initially address Andrews' claim that counsel failed to conduct a reasonable investigation into his background and mental condition. These allegations are not sufficient to demonstrate that Andrews was denied the effective assistance of counsel. *See Wilkerson*, 950 F.2d at 1064-65 (rejecting similar allegations). "We must strongly presume that trial counsel rendered adequate assistance and that the challenged conduct was the product of

---

[20] The mitigating evidence Andrews now asserts was available consists of: school records that reveal his mental retardation; prison records that reveal his retardation and excellent disciplinary history; employment history; his deprived family and social history; testimony from relatives who could testify regarding Andrews' good character and lack of dangerousness.

reasoned trial strategy."[21]  *Id.* at 1065.  As the state habeas court recognized, Andrews' trial counsel and their investigator contacted at least 27 people, none of whom were able to provide information or evidence useful to Andrews.  Trial counsel also interviewed Andrews, his wife, and his mother without discovering any helpful evidence.  Furthermore, trial counsel testified that they had no reason to suspect that Andrews' mental capacity was "in any fashion impaired."  *Id.*  Because counsel had no reason to believe that pursuing further investigations into Andrews' mental capacity or his background would be useful, "counsel's failure to pursue those investigations may not . . . be challenged as unreasonable." *Burger v. Kemp*, 483 U.S. 776, 795, 107 S. Ct. 3114, 3126, 97 L. Ed. 2d 638 (1987); *see also Cantu v. Collins*, 967 F.2d 1006, 1016 (5th

---

[21]     Andrews nevertheless contends that counsel made no strategic choice in this case.  As proof of this contention, Andrews cites Laine's statement at the evidentiary hearing that he did not hear of the term "mitigating evidence" until 1984.  In concluding that Andrews received effective assistance at trial, the state habeas court apparently discredited much of Laine's testimony, which it was entitled to do. *See Stringer v. Jackson*, 862 F.2d 1108, 1116 (5th Cir. 1988), *reversed on other grounds*, ___ U.S. ___, 112 S. Ct. 1130, 117 L. Ed. 2d 367 (1992), *affirmed as modified*, 979 F.2d 38 (5th Cir. 1992).  Moreover, the record reflects that counsel, during the punishment stage, relied solely upon what he believed to be the jury's residual doubts about the evidence presented at the guilt phase of Andrews' trial.  Such a strategy "has been recognized as an extremely effective argument for defendants in capital cases." *Lockhart v. McCree*, 476 U.S. 162, 181, 106 S. Ct. 1758, 1769, 90 L. Ed. 2d 137 (1986) (internal quotation omitted); *see also Stringer*, 862 F.2d at 1116 (finding that counsel's decision to rely on residual doubt did not constitute ineffective assistance).

Cir. 1992), *cert. denied*, ___ U.S. ___, 113 S. Ct. 3045, 125 L. Ed. 2d 730 (1993).[22]

Finally, assuming arguendo that counsel's performance was deficient, Andrews has not demonstrated that presentation of the allegedly mitigating evidence would have affected the outcome of his trial. *See Wilkerson*, 950 F.2d at 1065 (noting that the petitioner must affirmatively prove prejudice under *Strickland*). In light of the evidence presented at trial,[23] Andrews "has failed to show evidence of sufficient quality and force to raise a reasonable probability that, had it been presented to the jury, a

---

[22]     *Compare Bouchillon v. Collins*, 907 F.2d 589, 597-98 (5th Cir. 1990) (finding that where the defendant apprised counsel of his mental problems prior to a plea hearing, counsel's failure to perform any investigation whatsoever for a possible insanity defense violated *Strickland*).

[23]     *See Glass v. Blackburn*, 791 F.2d 1165, 1170-71 (5th Cir. 1986) (finding that the jury would not have rendered a different verdict had mitigating evidence been offered because "[t]he murders were calculated and cold-blooded" and "[t]he mental anguish endured by the victims, leading up to and during their senseless murders, . . . was exquisite"). For example, Officer Harrell Fowler testified that Granado was not immediately killed))instead, he was "gasping for air, making gurgling-type noises . . . as [the ambulance attendants] were working on him." Moreover, the pathologist who conducted Granado's autopsy testified that, considering the point and angle of entry of the bullets, Andrews stood over Granado and shot him directly in the forehead. A firearms expert testified that the .38 caliber bullets used to kill Granado and Melindez had been altered to cause "more devastation" on impact. Moreover, during the punishment phase, one witness testified that Andrews had robbed the store at which the witness worked approximately one month before Granado was killed. Gloria Mae Thomas testified that Andrews had robbed a second store shortly before Granado's murder and had threatened to kill two Port Arthur, Texas police officers. Detective Ron Robertson stated that Andrews, when he was arrested, had in his possession a stolen check made out to him.

life sentence would have resulted." *Id.; see also Callins v. Collins*, 998 F.2d 269, 279 (5th Cir. 1993) (noting that the circumstances of the murder and the defendant's other violent conduct "would have overwhelmed the minimal mitigating evidence that Callins how argues should have been introduced at the capital sentencing phase"), *cert. denied*, ___ U.S. ___, 114 S. Ct. 1127 (1994). Because Andrews has failed to meet the prejudice prong of the *Strickland* test, he is not entitled to relief.

**2**

We next address Andrews' complaint that his trial counsel failed to adequately indicate to the jury the mitigating circumstance of his low intelligence. At the evidentiary hearing in the instant case, Andrews offered expert testimony suggesting that his IQ was 68,[24] on the upper borderline of mild retardation. *See Penry v. Lynaugh*, 492 U.S. 302, 308 n.1, 109 S. Ct. 2934, 2941 n.1, 106 L. Ed. 2d 256 (1989) (noting that individuals with IQ scores between 50 and 70 have "mild" retardation). A psychiatrist testifying for the state expressed the view that Andrews "probably" was in the borderline range of normal, with an IQ of between 70 and 80. Other evidence generally was consistent with the conclusion offered by the state's psychiatrist, and the state habeas court found that Andrews "most likely fell in the borderline area between mild mental retardation and dull normal intelligence."

---

[24] The psychologist testifying for Andrews administered only a portion of the Wexler Adult Intelligence scale under what he admitted were adverse, non-clinical conditions.

-23-

Consequently, Andrews' claim is without merit. *See Smith v. Black*, 904 F.2d 950, 977 (5th Cir. 1990) (finding that counsel was not deficient in failing to alert the jury in a capital case to the defendant's IQ of 70), *vacated on other grounds*, ___ U.S. ___, 112 S. Ct. 1463, 117 L. Ed. 2d 609, *aff'd in relevant part*, 970 F.2d 1383 (5th Cir. 1992).[25]

Finally,

> [t]he likely impact of testimony regarding [Andrews'] intelligence . . . would have been tempered by his trial strategy of insisting on his complete innocence . . . , a theory that also proved the linchpin of [his argument for mitigation]. There is no suggestion that [Andrews'] alleged deficiencies were such [that would] alert defense counsel to the inferiority of such a strategy.

*Id.* Accordingly, Andrews' "claim presents neither a sufficient deficiency nor consequent prejudice to support a finding of constitutionally ineffective assistance of counsel." *Id.* at 978; *see also Motley v. Collins*, 3 F.3d 781, 786 (5th Cir. 1993) (noting that "the failure to introduce evidence of [the defendant's organic] brain damage would have been a reasonable strategic decision; after all, such evidence is double-edged))in that it may have militated in favor of a `yes' answer to the future dangerousness special issue."); *King v. Puckett*, 1 F.3d 280, 285 (5th Cir. 1993) (concluding "that the failure to offer mitigating

---

[25]    *Compare Jones v. Thigpen*, 788 F.2d 1101, 1102-03 (5th Cir. 1986) (finding that counsel rendered ineffective assistance by failing to present any mitigation evidence because the habeas proceedings demonstrated that the prosecution and defense agreed that Jones was mentally retarded, with a tested full scale IQ of less than 41), *cert. denied*, 479 U.S. 1087, 107 S. Ct. 1292, 94 L. Ed. 2d 148 (1987).

evidence in the form of King's diminished mental capacity" did not affect "the outcome of his sentencing"); *Duhamel v. Collins*, 955 F.2d 962, 966 (5th Cir. 1992) (finding that evidence of a defendant's moderate retardation was "weak" mitigating evidence).

### C

Andrews next contends that the representation provided by his appellate counsel))also Sekaly and Laine))was constitutionally deficient because they did not raise two issues on direct appeal.

Andrews first contends that had counsel raised the issue of juror Tomplait's apparent bias against him on direct appeal, the Texas Court of Criminal Appeals would have reversed his conviction. Andrews bases his contention on *Stockton v. State*, 187 S.W.2d 86 (Tex. Crim. App. 1945). In *Stockton*, the defendant killed a prison guard during an escape attempt. The trial court denied Stockton's challenge for cause of a prospective juror who "was related to the deceased's daughter by affinity in the third degree."[26] 187 S.W.2d at 88. The Court of Criminal Appeals held that while "the trial court should have sustained [Stockton's] challenge for cause, [it] would not base a reversal hereof on this matter alone." *Id.* Moreover, it is undisputed that Tomplait was not disqualified for cause under Texas law. *See* Tex. Code Crim. Proc. Ann. art. 35.16(c)(1). Thus, Andrews, by relying on *Stockton*, has not shown that counsel acted unreasonably or that there is a reasonable

---

[26] The prospective juror's nephew was married to the deceased's daughter.

-25-

probability that the result of his appeal would have been different had counsel raised the issue of juror bias.

The second issue Andrews faults appellate counsel for failing to raise))the Fourth Amendment claim, *see* part XIV. *infra*))was addressed on the merits on state habeas review and found to be without merit.  Consequently, Andrews was not prejudiced by counsel's failure to raise the claim on direct appeal.

## VII

Andrews next argues that the prosecution withheld three pieces of purportedly exculpatory evidence, in violation of his due process rights.[27]  Under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196, 10 L. Ed. 2d 215 (1963), "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment."  The prosecution also must disclose evidence useful to the defendant for impeachment purposes.  *United States v. Bagley*, 473 U.S. 667, 676, 105 S. Ct. 3375, 3380, 87 L. Ed. 2d 481 (1985).  Thus, to establish a valid *Brady* claim, a defendant must

---

[27]    Andrews first argues that the prosecution did not disclose written statements given by witness Morales.  Andrews next argues that the prosecution did not disclose the fact that two witnesses))Joy Moore and William Quimby))would have testified, and gave statements to police indicating, that they saw Elliott Johnson and a second unidentified black man standing in front of the jewelry store shortly before it was robbed.  Andrews finally points out that Nancy Verzone testified by affidavit at the evidentiary hearing that while she saw Elliott Johnson fleeing the crime scene, she did not see anyone with him.  She further averred that she informed police of this shortly after identifying Johnson at a line-up.

establish that (1) the state suppressed evidence that was both (2) favorable to the accused and (3) material. *Edmond v. Collins*, 8 F.3d 290, 293 (5th Cir. 1993). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682, 105 S. Ct. at 3383.

Although Andrews has failed to demonstrate the existence of any prior inconsistent statements made by Morales, and did not seek their production at trial after Morales testified, he points to a newspaper article paraphrasing Beaumont Police Lt. Bruce Thomason's statement that "[t]he only description [Morales] could give police was that one man was wearing a red cap and both were wearing blue jeans." Because the record does not support a finding that Morales made any such statements, *see* part VI.A. *supra*, Andrews has failed to state a *Brady* claim. Moreover, "[a]lthough exculpatory and impeachment evidence falls within the purview of *Brady*, neutral evidence does not." *United States v. Dillman*, 15 F.3d 384, 390 (5th Cir. 1994). Consequently, the prosecution was under no duty to disclose that Moore and Quimby could not identify Andrews as the man they saw with Johnson.[28] *See Hughes v. Hopper*, 629 F.2d 1036, 1040 (5th Cir. 1980) (holding that the prosecution has no duty

---

[28] We also note that trial counsel interviewed Moore before trial and did not discover anything that they thought would prove helpful.

-27-

under *Brady* to disclose that a certain witness could not positively identify the defendant), *cert. denied*, 450 U.S. 933, 101 S. Ct. 1396, 67 L. Ed. 2d 367 (1981); *United States v. Rhodes*, 569 F.2d 384, 388 (5th Cir.) (same), *cert. denied*, 439 U.S. 844, 99 S. Ct. 138, 58 L. Ed. 2d 143 (1978). Finally, any testimony that could have been offered by Nancy Verzone was largely cumulative to that of Detective Charles Little.[29] *See Edmond*, 8 F.3d at 294. Finally, in light of the entire record, we cannot conclude that the suppressed evidence would, in reasonable probability, have moved the jury to embrace the theory it otherwise discarded))that Malcolm Davis was the taller triggerman. *See Kyles*, 5 F.3d at 815. The jury was more than adequately exposed to the defense's theory that Malcolm Davis was in fact the killer and that Andrews was not. The jury, however, refused to infer reasonable doubt from that possibility, and Andrews has "failed to undermine the overwhelming evidence of guilt at trial." *Id.* at 817. Accordingly, "we are not persuaded that it is reasonably probable that the jury would have found in [Andrews'] favor if exposed to any or all of the undisclosed materials." *Id.*

---

[29] Verzone testified by affidavit at the evidentiary hearing that as she exited a store "around the corner from where Granado's Jewelry Store was," Elliott Johnson, who was running down the street, bumped into her. She further stated that she did not see anyone with Johnson and that she informed police of this shortly after identifying Johnson at a line-up. Detective Little testified at trial that Verzone identified Johnson as the man she saw shortly after the robbery at a restaurant four blocks from Granado's store. Andrews failed to call Verzone to testify at the evidentiary hearing.

## VIII

### A

Andrews asserts that the trial court improperly excused for cause prospective juror Frank Landry. This error, he contends, violated his rights under the Sixth and Fourteenth Amendments. Under those amendments,

> a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction.

*Witherspoon v. Illinois*, 391 U.S. 510, 521-22, 88 S. Ct. 1770, ____, 20 L. Ed. 2d 776 (1968). However, a prospective juror may be excused for cause if his "views would prevent or substantially impair the performance of his duties as juror in accordance with his instructions and his oath." *Adams v. Texas*, 448 U.S. 38, 45, 100 S. Ct. 2521, 2526, 65 L. Ed. 2d 581 (1980); *see also Wainwright v. Witt*, 469 U.S. 412, 105 S. Ct. 844, 83 L. Ed. 2d 841 (1985). The presumption of correctness conditionally required under § 2254(d) applies to the trial court's determination regarding a challenge for cause because "such a finding is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province." *Witt*, 469 U.S. at 428, 430, 105 S. Ct. at 854, 855.

A review of Landry's voir dire examination indicates that Landry stated several times that he did not believe in the death penalty. Landry also stated that he could not impose the death

penalty under any circumstances, that he could not answer each of the special issues affirmatively "no matter what" the evidence was, and that he could not take the juror's oath because he could not follow the law of Texas that provides for the death penalty. In response to a question by defense counsel, Landry stated that he would answer special issue number two "no" because he could not predict the future. In response to subsequent questions by the prosecutor, Landry reaffirmed both his belief that he could not assess the death penalty under any circumstances and that he would answer the special issues in such a way as to ensure that the defendant would not receive the death penalty.[30] Because the record supports the conclusion of both the trial court and the Texas Court of Criminal Appeals, on direct review, that prospective juror Landry was excludable under *Witherspoon*, we presume that it is correct. *See Russell v. Collins*, 998 F.2d 1287, 1293-94 (5th Cir. 1993), *cert. denied*, ___ U.S. ___, ___ S. Ct. ___ (1994); *Drew v. Collins*, 964 F.2d 411, 417 (5th Cir. 1992), *cert. denied*, ___ U.S. ___, 113 S. Ct. 3044, 125 L. Ed. 2d 730 (1993). Moreover, Andrews fails present "clear and convincing evidence overcoming this presumption." *Kelly v. Lynaugh*, 862 F.2d 1126, 1134 (5th Cir. 1988), *cert. denied*, 492 U.S. 925, 109 S. Ct. 3263, 106 L. Ed. 2d 608 (1989). Accordingly, Andrews' claim is without merit.

---

[30]     The transcript of the voir dire examination of Landry is quoted more extensively in *Andrews*, 744 S.W.2d at 46-48.

Andrews next contends that the trial court erred in excusing prospective juror Anthony Crook for cause. The trial court excused Crook pursuant to the prosection's motion because Crook testified during voir dire that he could not consider imposing probation as the sentence in a murder case, even though Texas law allows such a sentence.[31] Andrews argues that because probation is not a sentencing option in capital murder cases and "there was not even a remote possibility that a lesser included offense of murder [sic] would be submitted to the jury," the trial court erred in excluding Crook.

While, with the benefit of hindsight, it may be clear that the evidence does not support a murder instruction, we conclude that it was not apparent, at the time of jury selection, that the trial court would not be required to submit such an instruction. Indeed, Andrews' federal habeas petition contended that the trial court's refusal to submit instructions regarding "the lesser included offenses of murder, robbery, and theft" deprived Andrews of his constitutional rights. Moreover, the parties during jury selection appear to have been operating under the assumption that Andrews, if convicted, may have been eligible to receive a sentence of probation. *See* 5 Transcript of Individual Voir Dire at 590-611

---

[31] The prosecution apparently was attempting to foreclose a possible ground for reversal on appeal in the event the jury found Andrews guilty of capital murder and the death penalty was assessed.

(where the parties extensively question Crook about his views regarding probation); *see also Nethery v. State*, 692 S.W.2d 686, 691 (Tex. Crim. App. 1985) (holding that the prosecution, in a capital murder case, properly challenged for cause potential jurors who "expressed a bias against the minimum punishment for the lesser included offense of murder), *cert. denied*, 474 U.S. 1110, 106 S. Ct. 897, 88 L. Ed. 2d 981 (1986). Consequently, the trial court did not err in excusing Crook for cause.

## C

Andrews argues that the trial court erred by refusing to exclude for cause prospective jurors David Malcolm Simon and Jerry Sessions.[32] Andrews further contends that the district court erred by according the § 2254 presumption of correctness to the trial court's findings that Simon and Sessions were not excludable for cause.[33] We agree that there is sufficient evidence in the record

---

[32]     Andrews argues that Simon should have been excused because he stated that "he saw no difference between the culpability of a non-triggerman who anticipated that death would occur during a robbery and the culpability of a non-triggerman who did not anticipate that death would occur." Simon, however, also testified that he could "follow the law and put [his] personal feelings out of the picture.

[33]     Andrews next urges that Sessions should have been excused because he "testified that he would invariably vote for the death penalty in a murder case." After the attorneys explained the sentencing procedure to Sessions, he stated that he could set aside his personal feelings and apply the law, even if doing so would result in a sentence less than death.

[33]     Andrews contends that the trial court did not make a finding that Sessions was qualified to serve as a juror. We disagree. *See Jones*, 864 F.2d at 362 (noting a finding that the challenged juror was qualified is implicit in the court's refusal

supporting the trial court's decisions and, therefore, that the district court did not err in presuming those findings to be correct.

## IX

Andrews challenges the prosecution's use of peremptory challenges to exclude any juror who expressed "even the slightest qualms about the death penalty," arguing that such use violates the Sixth, Eighth, and Fourteenth Amendments. The district court held this claim to be procedurally barred. Andrews contends that this ruling was in error because the Texas Court of Criminal Appeals did not clearly and expressly rely on a procedural bar and, even if it did, any procedural default was the result of ineffective assistance of counsel.

On application for the writ of habeas corpus, federal courts will not review a state court's holding on a federal law claim if that holding rests upon a state law ground that is both independent of the merits of the federal claim and adequate to support the state court's judgment. *Sawyers v. Collins*, 986 F.2d 1493 (5th Cir.), *cert. denied*, ___ U.S. ___, 113 S. Ct. 2405, 124 L. Ed. 2d 300 (1993). Thus, "[w]hen a state-law default prevents the state court from reaching the merits of a federal claim, that claim cannot be reviewed in federal court." *Ylst v. Nunnemaker*, ___ U.S. ___, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991).

---

to excuse her for cause).

Andrews argues that the Texas Court of Criminal Appeals did not clearly and expressly rely on procedural default. We disagree. The state habeas court found that Andrews' claim was barred because he lodged no objection at the time of trial; the Court of Criminal Appeals determined that this conclusion was "supported by the record" and denied relief "on the basis of the trial court's findings and conclusions." *See Ylst*, ___ U.S. at ___, 111 S. Ct. at 2594 (holding that "where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground"). Consequently, Andrews' claim is barred by procedural default.

Andrews attempts to avoid the procedural default rule by arguing that counsel's failure to make an objection at trial to the prosecution's use of peremptory challenges constitutes ineffective assistance.[34] However, "we have consistently held that in capital cases peremptory challenges may be used to exclude those [prospective jurors] who express hesitancy about imposing the death penalty but whose exclusion for cause is forbidden by *Witherspoon*." *United States v. Leslie*, 783 F.2d 541, 552 n.18 (5th Cir. 1986) (en banc), *vacated on other grounds*, 479 U.S. 1074, 107 S. Ct. 1267, 94 L. Ed. 128 (1987), *aff'd in relevant part*, 813 F.2d 659 (5th Cir.

---

[34] To overcome the procedural default bar, a petitioner must demonstrate "cause" for the default and "prejudice." *Wainwright v. Sykes*, 433 U.S. 72, 86-87, 97 S. Ct. 2497, 2506, 53 L. Ed. 2d 894 (1987). Ineffective assistance of counsel may constitute "cause." *See Ellis v. Lynaugh*, 883 F.2d 363, 367 (5th Cir. 1989).

1987); *see also Sonnier v. Maggio*, 720 F.2d 401, 406-07 (5th Cir. 1983), *cert. denied*, 465 U.S. 1051, 104 S. Ct. 1331, 79 L. Ed. 2d 726 (1984); *Jordan v. Watkins*, 681 F.2d 1067, 1070 & n.2 (5th Cir. 1982). Failure to make an objection that we have explicitly rejected does not constitute ineffective assistance of counsel. Consequently, Andrews' claim remains barred by procedural default.

**X**

Andrews contends that the trial court erred in refusing to instruct the jury in the guilt phase of his trial that it could convict him of the lesser-included offenses of theft or robbery. He asserts that this failure violated the Eighth Amendment and the due process clause of the Fourteenth Amendment. *See Beck v. Alabama*, 447 U.S. 625, 100 S. Ct. 2382, 65 L. Ed. 2d 392 (1980). In a capital trial, a defendant is constitutionally entitled to instructions on lesser-included offenses only if a "rational juror, given all the facts, [could acquit him] of capital murder and convict[] him of a lesser included offense." *Cordova v. Lynaugh*, 838 F.2d 764, 767 (5th Cir.), *cert. denied*, 486 U.S. 1061, 108 S. Ct. 2832, 100 L. Ed. 2d 932 (1988). "This necessarily requires a showing that the facts of the case and the laws of the State warrant such an instruction." *Hill v. Black*, 920 F.2d 249, 252 (5th Cir. 1990) *modified*, 932 F.2d 369 (5th Cir. 1991). Because Andrews had made no attempt on appeal to make such a showing, we reject the argument that he was constitutionally entitled to instructions regarding any lesser-included offenses. *See id.*

Andrews next contends that the Texas special issues did not permit the jury to consider or give mitigating effect to evidence of his good family relationship and low intelligence. Andrews points out that this mitigating evidence was placed before the jury when the prosecution introduced a letter written by Andrews and sent to his wife that allegedly demonstrates his good family relationship, low intelligence, and possible mental problems.[35]

The Supreme Court upheld the Texas capital sentencing scheme in *Jurek v. Texas*, 428 U.S. 262, 96 S. Ct. 2950, 49 L. Ed. 2d 929 (1976), in part because the Texas Court of Criminal Appeals had indicated that the special issues would be broadly interpreted to allow a jury to consider any and all mitigating evidence introduced by a defendant.[36] However, in *Penry v. Lynaugh*, 492 U.S. 302, 109 S. Ct. 2934, the Court held that, in some cases, the Texas scheme

---

[35] Andrews also argues that the jury could not give mitigating effect to evidence that Andrews used drugs. However, this claim lacks factual support because there is no evidence suggesting that Andrews was on drugs at the time of the murder or that he was permanently impaired as a result of prior drug use. *See Sawyers*, 986 F.2d at 1501. Consequently, the district court properly rejected that claim. *Id.*

[36] The culpability principle found in the Eighth Amendment requires that punishment be directly related to the personal culpability of the criminal defendant. *Eddings v. Oklahoma*, 455 U.S. 104, 102 S. Ct. 869, 71 L. Ed. 2d 1 (1982); *Lockett v. Ohio*, 438 U.S. 586, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978) (plurality opinion). Thus, a state cannot, "consistent with the Eighth and Fourteenth Amendments, prevent the sentencer from considering and giving effect to evidence relevant to the defendant's background or character or to the circumstances of the offense that mitigate against imposing the death penalty." *Penry*, 492 U.S. at 318, 109 S. Ct. at 2946.

would not permit the jury to give effect to certain mitigating evidence introduced by a defendant. Specifically, the Court found that the special issues did not provide the jury with "a vehicle for expressing its `reasoned moral response' to" evidence of mental retardation and child abuse. *Id.* at 328, 109 S. Ct. at 2952. In such situations, the jury must be instructed "that it could consider and give effect to the mitigating evidence of . . . mental retardation and abused background by declining to impose the death penalty." *Id.* "The language of *Penry*, although arguably worded broadly, has been interpreted narrowly." *Motley*, 3 F.3d at 788. Consequently, some mitigating factors, such as circumstances of the defendant's family background and positive character traits, are adequately covered by the second special issue. *Graham v. Collins*, ___ U.S. ___, 113 S. Ct. 892, 902, 122 L. Ed. 2d 260 (1993). In light of *Graham*, we conclude that the special issues provided the jury with a vehicle to consider any allegedly mitigating evidence regarding Andrews' family relationships.

Finally, although the letter cited by Andrews indicates that he *may* have had a lower-than-average IQ, it does not demonstrate that he is mentally retarded. *See Penry*, 492 U.S. at 328, 109 S. Ct. at 2952 (holding that a jury in a capital case must be permitted to "consider and give effect to the mitigating evidence of [a defendant's] *mental retardation*") (emphasis added); *Madden v. Collins*, No. 92-8575, slip op. at 3490 (5th Cir. Mar. 29, 1994) (holding that evidence of a learning disability did not establish

-37-

a *Penry* claim because it was not "uniquely severe"). Because the letter does not demonstrate that Andrews was mentally retarded, it does not constitute mitigating evidence outside the scope of the special issues. Thus, the trial court was not required to provide the jury with a vehicle to consider it.

## XII

Andrews argues that the "Texas death penalty statute discourage[s] the discovery and penalize[s] the use of mitigating evidence." Black specifically contends that the structure of the death penalty scheme "chilled" his trial attorneys' investigation and presentation of mitigating evidence, apparently evidence pertaining to his mental condition and family history.

We have rejected almost identical claims in *Black*, 962 F.2d at 407, and *May v. Collins*, 948 F.2d 162, 167-68 (5th Cir. 1991), *cert. denied*, ___ U.S. ___, 112 S. Ct. 907, 116 L. Ed. 2d 808 (1992). As in both *Black* and *May*, Andrews premises his argument on the principle that "[t]he Texas sentencing procedure interferes dramatically with the defendant's choice of whether and how to present mental-health based evidence." *Black*, 962 F.2d at 394. We concluded in those cases that a constitutional violation does not result simply because the Texas death penalty scheme triggers certain tactical choices on the part of counsel. *Id.; May*, 948 F.2d at 167-68. Accordingly, *May* and *Black* squarely address and reject the argument presented by Andrews. *See also Marquez v.*

*Collins*, 11 F.3d 1241, 1248 (5th Cir. 1994); *Wilkerson*, 950 F.2d at 1065.

## XIII

Andrews asserts that the Texas special issues did not require the jury to find that he "killed, attempted to kill, or was a major participant in a crime who acted with reckless indifference for human life." Andrews therefore concludes that the former Texas death penalty statute is unconstitutional as applied to him because he raised the factual defense that he was not the triggerman and the jury could have sentenced him to death based solely upon his participation in planning the robbery.[37]

In *Enmund v. Florida*, 458 U.S. 782, 797, 102 S. Ct. 3368, 3376, 73 L. Ed. 2d 1140 (1982), the Supreme Court held that the Eighth Amendment forbids imposition of the death penalty on a defendant "who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed."[38] In *Skillern v. Estelle*, 720 F.2d 839, 847-48 (5th Cir. 1983), *cert. denied*, 469 U.S. 873, 105 S. Ct. 224,

---

[37] The trial court instructed the jury at the guilt-innocence stage that it could find Andrews guilty of capital murder if it first found that Andrews, "either acting alone or as a party," intentionally caused the death of Granado in the course of committing a robbery.

[38] In *Tison v. Arizona*, 481 U.S. 137, 158, 107 S. Ct. 1676, 1688, 95 L. Ed. 2d 127 (1987), the Court found "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement."

83 L. Ed. 2d 153 (1984), we held that a jury's affirmative answer to the first special issue))"whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result"))satisfied the *Enmund* culpability requirement. *See also Johnson v. McCotter*, 804 F.2d 300, 302 (5th Cir. 1986) (following *Skillern*), *cert. denied*, 481 U.S. 1042, 107 S. Ct. 1988, 95 L. Ed. 2d 827 (1987).[39] Here, the jury answered the first special issue in the affirmative, finding beyond a reasonable doubt that Andrews committed the acts that caused Granado's death deliberately and with the reasonable expectation that Granado's

---

[39] Andrews argues that *Skillern* is distinguishable from the present case because Andrews' trial counsel objected to the jury charge while defense counsel in that case failed to object. In *Skillern*, however, we did not rely on procedural default in holding that no *Enmund* violation occurred. Instead, we addressed the merits of the defendant's argument and rejected it. *See Skillern*, 720 F.2d at 848 ("We cannot say that the sentencing instructions themselves permitted the jury to find that the requisite deliberate intent or contemplation to kill could be based solely upon [his accomplice's] killing of the victim"); *id.* at 848 n.8 ("In the case before us, the sentencing instructions as given did not invoke Skillern's personal criminal responsibility for the acts of his accomplice."). Consequently, we find Andrews' attempt to distinguish *Skillern* unpersuasive.

death would result.[40]  Accordingly, Andrews' *Enmund* claim is without merit.[41]

## XIV

Andrews asserts that the district court erred in ruling that his Fourth Amendment challenge to a search warrant used to gather evidence against him was not cognizable on habeas review because the state courts provided an opportunity for "full and fair" litigation of that challenge.  *See Stone v. Powell*, 428 U.S. 465, 494, 96 S. Ct. 3037, 3052, 49 L. Ed. 2d 1067 (1976).  Although the state trial court initially held that Andrews waived the claim by failing to raise it in a pretrial motion and refused to allow

---

[40]    Indeed, the Texas Court of Criminal Appeals, in addressing Andrews' claim on direct appeal, stated,

> the facts are overwhelming that the jury could have easily found that [Andrews] himself intentionally caused the death of Granado by shooting [Granado] in the head with his pistol.  There is also overwhelming evidence that [Andrews], with others, planned the robbery, and, lastly, there is overwhelming evidence that . . . [Andrews] did not intend to leave any live witnesses after the robbery had been committed.  Thus, we find that based upon the evidence a rational trier of fact could have easily found that [Andrews] not only "caused the death of the deceased deliberately and with the reasonable expectation that the death of the deceased would result in the course of the commission of the aggravated robbery of Granado", [sic] but could have very easily found that [Andrews'] conduct was deliberate.

744 F.2d at 52.

[41]    Andrews does not argue that the Texas capital punishment scheme precluded the jury from giving mitigating effect to his alleged non-triggerman status.  *See, e.g., Harris*, 990 F.2d at 188 (rejecting a claim that the Texas special issues did not allow a jury to give mitigating effect to the defendant's alleged non-triggerman status).

Andrews an evidentiary hearing on the matter, the court allowed Andrews to make a bill of exceptions to that ruling after trial.[42] On post-conviction review, the state habeas court found that although it erred at trial in determining that Andrews waived the claim, the evidence developed with regard to the bill of exceptions established that the search and seizure at issue was lawful.

We conclude that "the State has provided an opportunity for full and fair litigation of [Andrews'] Fourth Amendment claim." *Id.* After reviewing the record, we find that the material facts were adequately developed in state court, and Andrews has not alleged any "undeveloped evidence sufficient to call into question the `reliability' of the state court's determination of [his] federal claims." *Streetman v. Lynaugh*, 812 F.2d 950, 958 (5th Cir. 1987) (quoting *Townsend v. Sain*, 372 U.S. 293, 312-13, 83 S. Ct. 745, 747, 9 L. Ed. 2d 770 (1963)). Moreover, the *Stone v. Powell* bar applies despite the trial court's initial decision to deny an

---

[42] Andrews informed the trial court of his grounds for claiming a Fourth Amendment violation))namely, that the affidavit supporting the search warrant was insufficient as a matter of law and that the search and seizure was outside the scope of the warrant. The prosecution then presented the testimony of two police officers, both of whom Andrews had the opportunity to cross-examine. After the prosecution concluded its presentation, Andrews declined the opportunity to present evidence.

evidentiary hearing.[43]  Accordingly, the district court correctly held that *Stone v. Powell* bars Andrews' Fourth Amendment claim.

## XV

Andrews argues that the trial court's failure to grant his motion for a change of venue violated his due process right to a fair trial before an impartial tribunal.  Pointing to the "intense and inflammatory pretrial publicity" in Jefferson County about Granado's murder, Andrews contends that the pretrial publicity was so prejudicial as to make a fair trial in Jefferson County impossible.  The district court found that because "[t]he publicity concerning the [murder] was largely factual" and Andrews failed to uncover any "deep or widespread prejudice" against him during voir dire, the trial court did not err in denying a change of venue.

We agree with the district court's assessments.  "The Constitution does not require that jurors be completely unaware of the facts and issues to be tried . . . ." *Black*, 962 F.2d at 409.  Moreover, the record reflects that Andrews did not sustain his

---

[43]    *See Christian v. McKaskle*, 731 F.2d 1196, 1199 (5th Cir. 1984) (holding that *Stone v. Powell* applies even though the state habeas court erroneously held that petitioner's Fourth Amendment claim had been adjudicated on direct review); *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980) (holding that "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits," *Stone v. Powell* barred petitioner's claim even though the habeas court's procedural mistakes thwarted the presentation of the claim); *Swicegood v. Alabama*, 577 F.2d 1322, 1324-25 (5th Cir. 1978) (holding that *Stone v. Powell* applies despite a state court error in deciding the merits of petitioner's Fourth Amendment claim).

burden of demonstrating that the trial atmosphere was "utterly corrupted by press coverage." *Dobbert v. Florida*, 432 U.S. 282, 302, 97 S. Ct. 2290, 2303, 53 L. Ed. 2d 344 (1977); *see also Black*, 962 F.2d at 409. Accordingly, we reject Andrews' contention that his due process rights were violated.

## XVI

Andrews next argues that the Eighth Amendment prohibits his execution because he is mentally retarded. Although the Supreme Court has explicitly rejected the claim that the Eighth Amendment prohibits the execution of mentally retarded persons, *Penry*, 492 U.S. at 334-35, 109 S. Ct. at 2955, Andrews argues that we should adopt the conclusion rejected by *Penry* because "there is now an emerging national consensus against executing mentally retarded persons."[44] However, the fact that three states, subsequent to *Penry*, have prohibited executing the mentally retarded does not provide evidence of a national consensus sufficient to override the command of *Penry*. Consequently, Andrews' claim is without merit.

## XVII

Andrews raises various other claims of error in his brief but fails to argue the facts surrounding these issues or cite to controlling law. *See* Fed. R. App. P. 28(a). Accordingly, we consider those issues waived and will not address them. *See*

---

[44]     Andrews contends that a total of five states now prohibit execution of a person who is mentally retarded. When the Supreme Court decided *Penry*, two states prohibited such executions. *See* 492 U.S. at 334, 109 S. Ct. at 2955.

*Edmond*, 8 F.3d at 292 n.5; *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993).

## XVIII

For the foregoing reasons, we **AFFIRM** the judgment of the district court.